IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID ELTON MANDEVILLE,           :        CIVIL ACTION NO. **3:CV-09-1125**
                                  :
            Petitioner            :        (Judge Caputo)
                                  :
            v.                    :        (Magistrate Judge Blewitt)
                                  :
PAUL K. SMEAL,                    :
                                  :
            Respondent            :

## REPORT AND RECOMMENDATION

### I. Background.

On June 15, 2009, Petitioner, David Elton Mandeville ("Petitioner"), an inmate at SCI-Smithfield ("SCI-Smithfield"), Huntingdon, Pennsylvania, filed, *pro se*, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner names as Respondent Paul K. Smeal ("Respondent").[1] Petitioner paid the required filing fee.[2] Petitioner challenges his 1998 convictions for first degree murder, robbery, burglary, theft by unlawful taking or disposition, and criminal conspiracy, as well as his life sentence, in the Wayne County Court of Common Pleas. Petitioner raised several grounds, including: (1) Violation of Fifth, Sixth and Fourteenth Amendment right to counsel and right to due process; (2) Violation of Fifth, Sixth and Fourteenth Amendment rights to jury trial and fair trial due to trial court's improper denial of juror challenge for cause; (3) Ineffective assistance of trial counsel; and (4) Ineffective assistance of appellate counsel.

---

[1]Petitioner correctly named Paul K. Smeal as Respondent since he is the Superintendent at SCI-Smithfield. *See* 28 U.S.C. §§ 2241 and 2242.

[2]Petitioner filed a Motion for Leave to Proceed *in forma pauperis* (Doc. 7), which the Court rendered moot since Petitioner had already paid the required filing fee. (Doc. 8).

Before serving the Petition on Respondent and addressing the Petitioner's claims, Petitioner was directed, on June 17, 2009, to submit to the Court copies of all of his state court appeals and the state court decisions, opinions, and orders regarding both his direct and collateral appeals, along with the filing dates thereof.[3]   The Court indicated that it would then determine if Petitioner's habeas petition was timely filed under the AEDPA[4] and if his instant claims were exhausted in the state courts.[5]   (Doc. 3).

On June 29, 2009, Petitioner submitted his state court records as directed by the Court along with his Affidavit and Summary of his State Court Filings.  (Doc. 6).  On July 10, 2009,

---

[3]The amended provisions of 28 U.S.C. § 2244(d)(1) impose limitations on the right to pursue federal habeas relief.  The amendments impose a one-year statute of limitations for § 2254 habeas petitions. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998).  There are four potential starting points for determining when the statute of limitations begins to run.  The applicable period in the instant matter is May 4, 2000, the date Petitioner's judgment became final, which was 90 days after Petitioner's Petition for Allowance of Appeal regarding his direct appeal was denied by the Pennsylvania Supreme Court on February 4, 2000.  *Merritt v. Blaine*, 326 F.3d 157 (3d Cir. 2003); *Yanes v. Nish*, 2009 WL 1045884, *1 (M.D. Pa.).  Any time devoted to pursuing a properly filed application for state post-conviction relief or other collateral relief is excluded from the limitations period.  28 U.S.C. § 2244(d)(2); *Merritt, supra*.

[4]The Third Circuit Court of Appeals, in *Holden v. Mechling*, 2005 WL 1219860 (3d Cir.), found that the District Court could *sua sponte* raise the AEDPA's statute of limitations and could summarily dismiss a § 2254 habeas petition as untimely after Petitioner is afforded notice and an opportunity to be heard.  *See also U.S. v. Bendolph*, 409 F.3d 155 (3d Cir. 2005);  *Day v. McDonough*, 126 S.Ct. 1675, 1683 (2006).  We thus gave Petitioner Mandeville notice and an opportunity to be heard regarding whether his habeas petition was timely under the AEDPA.

[5]The habeas statute requires a prisoner to exhaust his claims in state court before seeking relief from federal courts.  28 U.S.C. § 2254(b)(1)(A); *see also Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir. 1990).  It is well settled in the Third Circuit that the Court has discretion to raise procedural issues, such as exhaustion of state court remedies, in habeas cases, and it may do so *sua sponte*.  *See Sweger v. Chesney*, 294 F.3d 506, 520-521 (3d Cir. 2002), *cert. denied*, 538 U.S. 1002 (2003).

Petitioner filed a Motion to Stay or Suspend his habeas case pending the disposition of his Amended (second) PCRA Petition, which was scheduled for a hearing on August 4, 2009,  in Wayne County Court.  (Doc. 9 and Doc. 6-9, p. 5).  On August 13, 2009, we issued a Report and Recommendation recommending that the Court deny the Petitioner's Motion to Stay (Doc. 9) as moot and dismissing his Habeas Petition (Doc. 1) as untimely.  (Doc. 12).

On August 17, 2009, Petitioner filed a Motion to Appoint Counsel, Brief in support and Unsworn Declaration.  (Docs. 13, 14 and 15).  On August 27, 2009, Petitioner filed Objections to the August 13, 2009 Report and Recommendation regarding his Motion to Stay or Suspend his habeas case.  (Doc. 17).  On November 23, 2009, the Court issued a Memorandum and Order overruling Petitioner's Objections to the August 13, 2009 Report and Recommendation regarding his Motion to Stay or Suspend his habeas case (Doc. 17) and adopting our Report and Recommendation.  (Doc. 18).  The Court further dismissed the Petitioner's Petition for Writ of Habeas Corpus and denied his Motion to Stay.  (*Id.*).  *See Mandeville v. Smeal*, 2009 WL 4110315, M.D. Pa. (11-23-09).  On December 11, 2009, Petitioner filed a Motion to Alter Judgment and Motion for Relief from Judgment and brief in support.  (Docs. 19 and 20).

On December 21, 2009, Petitioner filed a Notice of Appeal with the Third Circuit regarding the Court's November 23, 2009 Memorandum and Order.  (Doc. 21).  On December 21, 2009, Petitioner also filed a Motion for Leave to Appeal *In Forma Pauperis* which was denied by the Court on March 30, 2010.  (Docs. 22 and 24).  On March 31, 2010, the Third Circuit denied Petitioner's application for certificate of appealability because the Petitioner "has not made a substantial showing of the denial of a constitutional right *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529

U.S. 473, 484 (2000).  For substantially the reasons stated by the District Court and the Magistrate Judge, appellant's habeas petition was properly denied..."  (Doc. 25).

On April 14, 2010 Petitioner once again filed a Motion for Leave to Appeal *In Forma Pauperis*.  (Doc. 26).  The Court denied Petitioner's Motion for Reconsideration on April 14, 2010.  (Doc. 27).  On September 14, 2010, Petitioner filed a Motion for Relief from Judgment which we will address in this Report and Recommendation.  (**Doc. 28**).  On November 29, 2010, the United States Supreme Court vacated the judgment of this Court, and the Third Circuit vacated its March 31, 2010 judgment of and remanded the case to the District Court for further proceedings.  (Doc. 29).  We find that Petitioner's Motion for Relief from Judgment was resolved by the Supreme Court's decision and is now moot.

On February 2, 2011, Petitioner filed a Motion to Appoint Counsel.  (Doc. 30).  On February 16, 2011, Petitioner filed a Motion for Expansion of Record and a Motion for Extension of Time to file a brief in support of his Motion for Relief from Judgment.  (Docs. 32 and 33).

On March 10, 2011, Petitioner filed a Motion to serve his Habeas Petition on Respondents.  (Doc. 37).

On March 14, 2011, we denied the Petitioner's Motion to Appoint Counsel.  (Doc. 39).  On June 10, 2011, Petitioner filed a Memorandum of Law in support of his Petition for Writ of Habeas Corpus.  (Doc. 51).  On July 13, 2011, Petitioner filed a Motion to Bar Procedural Defenses to which Petitioner filed a Motion to Withdraw same on July 14, 2011.  (Docs. 56 and 59).

On July 13, 2011, Petitioner once again filed a Motion to Appoint Counsel which we denied on July 15, 2011.  (Docs. 58 and 60).

On July 22, 2011, Respondent filed his Response to Petition for Writ of Habeas Corpus and Exhibits. (Docs. 70 and 71). On August 4, 2011, Petitioner filed his Traverse to Petition for Writ of Habeas Corpus. (Doc. 72).

On August 18, 2011, Petitioner filed a Motion for Respondent to Furnish Missing Records and on August 24, 2011, Petitioner filed a Motion for Discovery both of which we will address in this Report and Recommendation. (**Docs. 73 and  74**). On November 10, 2011, the Petitioner filed a Motion to Amend/Correct his Habeas Brief and Reply which the Court granted on November 10, 2011. (Docs. 75 and 76). Petitioner filed an Amendment to his Habeas Brief and Reply on November 10, 2011. (Doc. 77).

As stated, in his Habeas Petition, Petitioner challenges his  convictions for first degree murder, robbery, burglary, theft by unlawful taking or disposition, and criminal conspiracy in the Wayne County Court of Common Pleas ("CCP" or "trial court"). (Doc. 1, p. 1).[6]  Following a jury trial, on February 11, 1998, Petitioner states that he was convicted of all of the stated offenses. Petitioner states that he received a sentence of life imprisonment on the stated convictions on March 19, 1998. (*Id*.).

In particular, Petitioner raises nine (9) grounds for relief his Habeas Petition.  Specifically, Petitioner raises two (2) due process claims and seven (7) ineffective assistance of counsel claims. (*Id.*, pp. 22-29).[7]

--------

[6]For present purposes, we will use the page numbers associated with the electronic filing system rather than those on the form Habeas Petition.

[7]Petitioner has handwritten page numbers on some, but not all, of the additional pages he included in his Habeas Petition.  However, we will cite to the page numbers used by the

Regarding Ground One, Petitioner states:

> Questioning After Request For Lawyer, specifically evidence was obtained and introduced against Petitioner as a result of a questioning by police that continued after Petitioner stated that he wished to consult an attorney.  This violated Petitioner['s] Right to Counsel and Right to Due Process, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*, p. 22).

In Ground Two[8], Petitioner states:

> Cause Challenge Improperly Denied, specifically the court improperly refused to excuse a juror for cause.  This denied Petitioner's Right to Jury Trial and Right to Fair Trial, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*).

With respect to Ground Three, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to object to the court['s] charge which misdefined the concept of reasonable doubt.   This violated Petitioner's Right to Counsel, as guaranteed by Amendments 6 and 14 to the U.S. Constitution.

(*Id.*).

Regarding Ground Four, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to object to the Trial Court's instruction which removed Commonwealth's burden of proving specific intent of Petitioner, in this multi-accomplice case without first finding that Petitioner had the requisite specific intent to kill.  This violated

---

electronic filing system rather than Petitioner's handwritten page numbers.

[8] Neither Petitioner nor Respondent did not addressed this claim in their briefs.  (Docs. 51, 71).

> Petitioner's Right to Counsel, as guaranteed by Amendments 6 and 14 to the U.S. Constitution.

(*Id.*, p. 23).

As Ground Five, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to object to improper remarks by the prosecutor which were prejudicial and improper, and indulged in personal assertions of the Defendant's guilty. This violated Petitioner's Right to Counsel and Right to Fair Trial, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*).

In Ground Six, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to elicit favorable testimony from Linda Lopatofsky regarding her testimony about her telephone conversation with the victim relative to a female requesting assistance from the victim around the time of the crime. This violated Petitioner's Right to Counsel and Right to Fair Trial, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*, p. 24).

In Ground Seven, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to elicit favorable testimony from Commonwealth's witness, Kathleen Torrick, by asking her if the Defendant was one of her assailants. This violated Petitioner's Right to Counsel and Right to Fair Trial, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*, p. 26).

Ground Eight is as follows:

> Ineffective Assistance of Counsel on Appeal, specifically appellate counsel (who was the same as trial counsel) failed to federalize (*i.e.*

> state a federal question for federal review) on appeal regarding issue
> #2 on direct appeal relating to the Trial Court allowing into evidence
> testimony and other evidence relating to other crimes allegedly
> committed by the Defendant.  This violated Petitioner's Right to
> Counsel, Right to Fair Trial and Right to Due Process and Equal
> Protection, as guaranteed by Amendments 5, 6 and 14 to the U.S.
> Constitution.

(*Id.*, p. 28).

Finally, Ground Nine reads:

> Ineffective Assistance of Counsel, specifically counsel was ineffective
> for the cumulative effect of all or any of the previously raised ground
> for ineffective assistance of counsel.  This violated Petitioner's Right
> to Counsel, Right to Fair Trial and Right to Due Process, as guaranteed
> by Amendments 5, 6 and 14 of the U.S. Constitution.

(*Id.*, p. 29).

Petitioner's instant Habeas Petition is ripe for disposition on the merits.[9]

## II.  Procedural Background.

Following his March 19, 1998 life sentence, Petitioner filed a post-sentence motion with the trial court claiming the evidence was not sufficient to support his convictions.  The trial court denied this motion on April 6, 1998.  (Doc. 6, ¶ 1. and Doc. 6-4, p. 5).  Petitioner then filed a direct appeal with the Superior Court of Pennsylvania on May 1, 1998. (Doc. 6, ¶ 1.).  Petitioner's direct appeal filed with the Superior Court was docketed to No. 01480 PHL 98.  (Doc. 1, p. 2 and Doc. 6-4).  Petitioner states that he raised his above stated habeas claims, one and two, on direct appeal with the Superior Court of Pennsylvania.  (*Id.*, pp. 5, 7).  Furthermore, Petitioner states he raised claims

---

[9]The undersigned has been assigned this case for issuance of a Report and Recommendation.

three through eight *via* his PCRA Petition. (*Id.*, pp. 8, 10, 24, 25, 27, 28).  Petitioner admits he has not raised claim nine *via* either his direct appeal or his PCRA Petition. (*Id.*, p. 30).

Specifically, Petitioner states in his Habeas Petition:

> This ground [nine] was not raised in Pennsylvania state courts because it falls under the "futility" doctrine because there is no existing remedy in Pennsylvania for ineffective assistance of counsel because of cumulative errors.  Pennsylvania state law does not acknowledge the clearly inconsistent with federal constitutional law as set forth by the U.S. Supreme Court.  It would be futile to raise this issue in the Pennsylvania state courts.

(*Id.*).

Petitioner states that on August 3, 1999, the Superior Court affirmed his judgment of conviction. (*Id.*, p. 2).  The record Petitioner submitted supports this fact. (Doc. 6-4).  Petitioner filed a Petition with the Pennsylvania Supreme Court seeking permission for allowance to file an appeal, which was denied on February 4, 2000.[10]  (Doc. 6-5).  Thus, Petitioner's convictions became final on May 4, 2000, which was 90 days after Petitioner's Petition for Allowance of Appeal was denied by the Pennsylvania Supreme Court on February 4, 2000.  *See Petrov v. Klopotoski*, Civil No. 09-0530, M.D. Pa., 4-30-09 Memorandum (90-day time period for Petitioner to seek *certiorari* review from the U.S. Supreme Court is added to AEDPA SOL if Petitioner on his direct appeal had filed a Petition for allowance of appeal with the Pennsylvania Supreme Court); *Hammond v. Brooks*, 2009 WL 1507564, * 5 (E.D. Pa.).

---

[10]As Petitioner recognizes (Doc. 1, p. 6), a Petitioner in Pennsylvania does not have to seek review from the Pennsylvania Supreme Court to fully exhaust his state court remedies.  *See Lambert v. Blackwall*, 387 F. 3d 210, 233-234.

Petitioner filed a Petition for Post-Conviction Collateral Relief ("PCRA Petition") on January 19, 2001, in the CCP.  (Doc. 6-7, p. 2).  The trial court, sitting as the PCRA court, vacated Petitioner's conviction for Theft by Unlawful Taking or Disposition but denied the remainder of his PCRA Petition on December 5, 2006.  (*Id.*, p. 3 and Doc. 6-6).  Petitioner then filed an appeal, regarding the trial court's denial of his PCRA Petition, with the Superior Court of Pennsylvania on January 2, 2007.[11]  (Doc. 6, p. 2, ¶ 6 and Doc. 6-7).  The Superior Court found that Petitioner's January 19, 2001 PCRA Petition was not timely filed and affirmed the trial court's order denying Petitioner 's PCRA Petition.  (Doc. 6-7).

Specifically, the Superior Court stated:

> Although neither Mandeville nor the Commonwealth have raised the issue of the timeliness of the instant appeal, "questions of jurisdiction may be raised *sua sponte*." *Commonwealth v. Coolbaugh*, 770 A.2d 778, 791 (Pa.Super. 2001) (citation omitted).  The PCRA petition at issue was filed on January 19, 2001; thus, it is clearly governed by the 1995 amendments to the PCRA, which were enacted on November 17, 1995, and became effective sixty days later.  *See Commonwealth v. Murray*, 562 Pa. 1, 4, 753 A.2d 201, 202 (2000).  Under those revisions to the PCRA, any petition for post-conviction relief must be filed within one year of the date the judgment of sentence became final, unless one of the exceptions set forth in 42 PA.CONS.STAT.Ann. § 9545(b)(1)(I)-(iii) applies.  The time limitations imposed by the PCRA implicate our jurisdiction; therefore, they may not be altered or disregarded in order to address the merits of a petition.  *See id*.

> In the instant case, Mandeville's judgment of sentence became final once this Court affirmed the judgment of sentence on August 3, 1999, and

---

[11]We note that in Petitioner's Habeas Petition he stated that he filed his appeal of the CCP's denial of his PCRA Petition with the Superior Court of Pennsylvania on February  2, 2007.  (Doc. 1, p. 4).  However, in his Affidavit and Summary of Filing and Answered Events, Petitioner states he filed this appeal on January 2, 2007.  (Doc. 6, p. 2).  The Pennsylvania Court's Web site confirms that this appeal was filed on January 2, 2007.  *See* http://ujsportal.pacourts.us.  We take judicial notice of the PA Court's website.

the period for filing a direct appeal to the Supreme Court of Pennsylvania expired on September 2, 1999. [FN6]. ; Therefore, in order to comply with the filing requirements of the PCRA, Mandeville's petition had to be filed by September 4, 2000. [FN7]. As the petition was not filed until January 19, 2001 and Mandeville failed to plead any exception to the time bar pursuant to 42 PA.CONS.STAT.ANN. § 9545(b)(I) - (iii), it is patently untimely.

> FN6.  Pa. R.A.P. 1113 provides, in pertinent part, that "a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days of entry of the order of the Superior Court . . ."

> FN7.  The one-year deadline ended on September 20, 2000, which was a Saturday.  Pursuant to 1 PA.CONS.STAT.ANN. § 1908, the date for calculating the timeliness of Mandeville's PCRA petition began on September 4, 2000.

(Doc. 6-7, pp. 3-4).

The Superior Court also stated that "even if [Petitioner ] had filed a timely PCRA petition, we conclude that none of the issues raised on appeal merit relief." (*Id*., p. 4).  The Superior Court of Pennsylvania then affirmed the trial court's denial of Petitioner's PCRA Petition on October 18, 2007, as untimely and "further because none of [Petitioner 's] issues on appeal merit relief."  (Doc. 1, p. 4 and Doc. 6-7, p. 12).

On November 16, 2007, Petitioner filed a Petition for Allowance of Appeal, regarding the Superior Court's October 18, 2007 decision, with the Pennsylvania Supreme Court, which was denied on March 2, 2009.[12]  (*Id*. and Doc. 6-8 and Doc. 6-9).  On May 1, 2009, Petitioner filed an

---

[12]Petitioner fails to state the date he filed his Petition for Allowance of Appeal with the Pennsylvania Supreme Court in both his Habeas Petition and his Affidavit and Summary of Filing and Answered Events.  However, the Pennsylvania Court's Web site confirms that this Petition for Allowance of Appeal was filed on November 16, 2007.

Amended PCRA Petition for which an evidentiary hearing was scheduled in the CCP on August 4, 2009.  (Doc. 6-9, p. 5 and CCP Criminal Docket sheet).

As mentioned, Petitioner filed the instant Habeas Petition on June 15, 2009.  (Doc. 1, p. 1). On July 10, 2009, Petitioner filed a Motion to Stay the Habeas Corpus Proceedings until he exhausted all of his instant Habeas claims in the state court. (Doc. 9). On November 23, 2009 the Court dismissed the Writ of Habeas Corpus and denied the Motion to Stay.  (Doc. 18).   On December 21, 2009, Petitioner filed a Notice of Appeal with the Third Circuit regarding the Court's November 23, 2009 Memorandum and Order.  (Doc. 21).  The Third Circuit affirmed the District Court's Order on March 31, 2010.  (Doc.25).  On July 18, 2010, the Petitioner filed a Writ of Certiorari with the United States Supreme Court which granted the Petition on November 29, 2010, and remanded the matter to the Third Circuit in light of the Superior Court of Pennsylvania's decision of August 3, 2010.  The Third Circuit remanded this case to the District Court on January 5, 2011.  (Doc. 29).  The District Court has permitted the Petitioner to proceed on the merits of his Writ of Habeas Corpus.

### III. Standard of Review.

Review of the Petitioner's habeas claim is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254. "A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the 'very

fact or duration' of his confinement and seeking 'immediate release or a speedier release from that imprisonment.'" *Preiser v. Rodriguez*, 411 U.S. 475, 498-500 (1973).

In evaluating the merits of a state prisoner's habeas petition that has been presented to a state court and adjudicated on the merits, the district court must generally defer to the decisions of the state courts. The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt. *Felkner v. Jackson*, ---- U.S. ----, 131 S.Ct. 1305 (March 21, 2011) (citation omitted).

A district court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in a state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (discussing standard); *Harrington v. Gillis*, 456 F.3d 118, 124 (3d Cir. 2006) (same); *Rainey v. Varner*, 603 F.3d 189 (3d Cir. 2010). A decision by a state court is "contrary to . . . clearly established federal law" "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *Harrington*, 456 F.3d at 124; *see Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 887-88 (3d Cir. 1999) (*en banc*). A decision by a state court unreasonably applies federal law if "the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Harrington*, 456 F.3d at 124.

The application of §2254(d) entails two steps.  First, the court must determine whether "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *Matteo*, 171 F.3d at 888  (quoting *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998), overruled in part on other grounds by *McCambridge v. Hall*, 303 F.3d 24 (1st Cir. 2002)).  Then, if the court determines that the state court's decision was not "contrary to" federal law, "either because the state court decision complies with the Supreme Court rule governing the claim, or because no such rule has been established,"  the court must determine whether the state court's application of federal law was an "unreasonable application" of the Supreme Court rule. *Id*. at 889. Unreasonableness is an objective determination; a state court decision is unreasonable if, "evaluated objectively and on the merits, [it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id*. at 889-90; *see Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

## IV. Discussion.

As discussed, Petitioner raises two (2) due process claims and seven (7) ineffective assistance of counsel claims.  (*Id.*, pp. 22-29).

### 1. *Due Process Claims*

Regarding Ground One, Petitioner states:

> Questioning After Request For Lawyer, specifically evidence was obtained and introduced against Petitioner as a result of a questioning by police that continued after Petitioner stated that he wished to consult an attorney.  This violated Petitioner['s] Right to Counsel and Right to Due Process, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*, p. 22).

In order for Petitioner to claim violation of his Due Process rights, Petitioner needs to have invoked his *Miranda*[13] rights at the time he was questioned by the police.  Petitioner contends that his conviction was obtained in violation of his privilege against self-incrimination when his confessions to the police were made in violation of his *Miranda* rights.  Petitioner's argument is that the PA State Police detectives who interviewed him were intimidating, threatening, used psychological tactics and lied to him in order to obtain his cooperation.  (Doc. 51, pp. 20-39). In *Carl v. Good*, 2007 WL 4198417, *7-8 (M.D. Pa. 11-20-2007), the Court stated:

> The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U .S. Const. Amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination. *See Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). In *Miranda v. Hogan,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court held that "without proper safeguards the process of in-custody interrogation ... contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467. A confession taken during a custodial interrogation without the provision of *Miranda* warnings violates the privilege against self incrimination. *See Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the *Miranda* Court held, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *Thompson*, 516 U.S. at 107; *see also Miranda*, 384 U.S. at 479.
>
> The *Miranda* Court also outlined the procedures to be followed after the police provide the warnings. If the accused requests counsel, "the interrogation must cease until an attorney is present ." *Miranda*, 384 U.S. at 474. *Miranda* thus declared that an accused has a Fifth and

---

[13] *See Miranda v. Arizona*, 384 U.S. 477, 86 S. Ct. 1602, 16 L.Ed 2d 694 (1966).

Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 481, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). These rights may be waived, provided the waiver is voluntary, knowing and intelligent. *Miranda*, 384 U.S. at 444. In *Edwards,* the Supreme Court held that:

> [W]hen an accused has invoked his right to
>
> have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused ..., having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police ....[I]t is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.

*Edwards*, 451 U.S. at 484-85.

If the totality of the circumstances surrounding the interrogation demonstrates that the defendant had the required level of comprehension, a court may properly conclude that the waiver was knowing and intelligent. While the ultimate issue of whether a *Miranda* waiver is constitutionally valid is a question of law requiring independent federal determination, factual questions decided by the state court in determining whether a confession was given voluntarily, knowingly and intelligently, are entitled to a presumption of correctness in federal habeas review. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The Pennsylvania Supreme Court's holding in *Commonwealth v. Hubble,* 509 Pa. 497, 504 A.2d 168 (Pa.1986) that the *Edwards* prohibition against all additional police-initiated conversation may only be triggered by a

> clear and unequivocal invocation of the right to counsel by an accused. Under *Hubble,* if counsel is not actually requested, then the *Edwards* rule prohibiting further questioning is not triggered. This state law is consistent with established federal law, as *Edwards* clearly speaks in terms of an accused clearly asserting/expressing his desire to deal with police only through counsel.

*Id.*

Based on the above, the record demonstrates that the trial court issued findings of fact which Respondent has reiterated in his brief and we quote in pertinent part:

> 5.  Todd read the Defendant [Petitioner Mandeville] the *Miranda* Rights, Warnings, and Waiver from Com . Ex. 100 - the Defendant appeared to understand these rights and had no questions.
> ...
> 7.  Todd then read the Defendant *Miranda* Warnings from Com. Ex. 101.
> ...
> 12.  The Defendant understood his *Miranda* Rights and freely and voluntarily gave his statement.
> 13.  At no time did the Defendant request an attorney or inform Todd or Clader he was represented by an attorney.
> ...
> 18.  The Defendant indicated a desire to provide a statement.
> 19.  Todd then read to the Defendant the *Miranda* Rights, Waiver and Warnings from Com Ex. 1B and the Defendant also read Com Ex. 1B; the Defendant appeared to understand these rights and had no questions.
> ...
> 21.  Todd also read to the Defendant *Miranda* Warnings from Com. Ex. 1D.
> ...
> 26.  The Defendant understood his *Miranda* Rights and freely and voluntarily gave his statement. (Com. Ex 1D).
> 27. At no time did the Defendant request an attorney or inform Todd or Clader he was represented by an attorney.

(Doc. 64, pp. 6-8)[14].

---

[14]   Todd and Clader were the Pennsylvania State Trooper Detectives who investigated Petitioner's criminal case.

As the above cited record clearly shows, at no time in this case did Petitioner specifically request counsel. He was given and waived his *Miranda* warnings on four occasions and engaged in discussions with the police after the waiving his *Miranda* rights on all occasions. There is nothing to suggest that the state court decision was based on unreasonable application of the facts in light of the court record nor was the decision contrary to established federal law. Therefore, Petitioner is not entitled to habeas relief on his first claim. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

> In Ground Two, Petitioner states:
>
> Cause Challenge Improperly Denied, specifically the court improperly refused to excuse a juror for cause. This denied Petitioner's Right to Jury Trial and Right to Fair Trial, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*).

This claim was raised in Petitioner's Habeas Petition, however, this claim is not addressed by either party in their briefs. (Doc. 1). Petitioner claims to have raised the issue on direct appeal. (Doc. 1). In Petitioner's Habeas Petition, Petitioner claims "[t]he trial court refused to excuse juror for cause when he had knowledge of deceased's brother and son, both of whom were witnesses for the Commonwealth, he was a customer of deceased and had a belief that police testimony was more believable than the testimony of others due to the fact that his father, aunts and uncles had all been involved in law enforcement." (Doc. 1, p. 6). The Superior Court addressed a similar issue to the issue in Petitioner's habeas petition involving the trial court's overruling of Petitioner's cause challenges for two jurors which Petitioner than used his peremptory challenges to excuse.

The Superior Court stated:

> To demonstrate that a prospective juror should have been excused for cause, the defendant must show the juror possessed "a fixed unalterable opinion that would prevent him or her from rendering a verdict based solely on the evidence and the law. *Commonwealth v. Blasioli*, 685 A.2d 151, 159 (Pa. Super. 1996).  Such a showing may be made where the juror admits his bias on questioning, or where the juror has such a close relationship, familial, financial or situational, with the parties, counsel, victims or witnesses that the court will presume a likelihood of prejudice, irrespective of the answers given on voir dire. *Id.* at 158.
>
> Mandeville (Petitioner) argues that the court should have excused juror 345 because the victim had once worked as her refuse collector, and should have excused juror 262 because he had relatives employed in law enforcement. (citation omitted).  Upon review, we cannot conclude that either of these situations rises to a level supportive of an inference that the juror possessed a "fixed unalterable opinion" that might have impacted his or her ability to render a verdict.  In neither case do the jurors' answers on examination suggest significant bias.  In point of fact, juror 345 disavowed any affinity with the victim saying "I only know that he was our garbage man and I sent him my check...I put the thing out and he picked it up and sent me a bill."  (citation omitted).  Similarly, though juror 262 indicated that he would tend to believe the testimony of a police officer over that of other witnesses, he stated as well that he could perceive all witnesses equally.  (citation omitted).  Moreover, based on the record before us, we discern no "situational bias" affecting either juror.

(Doc. 70, Ex.#1, pp. 305-306).

Because neither party addresses this claim further and there is nothing in the record to suggest that the state court decision was based on unreasonable application of the facts in light of the court record nor was the decision contrary to established federal law, Petitioner is not entitled to habeas relief on his second claim.  *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

2. *Ineffective Assistance of Counsel Claims*

A claim of ineffective assistance is governed by the two-prong test set forth by the Supreme Court in *Strickland*: "Under *Strickland*, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different." *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. at 687 (1984), 104 S.Ct. at 2052). The first prong is established by a showing that the trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id*. In order to prove that trial counsel was deficient, the Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the sixth amendment." *Id*. at 686. The court must be highly deferential in favor of trial counsel when evaluating counsel's performance. *Id*. It is well established that counsel cannot be ineffective for failing to raise a meritless claim. *See U.S. v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999); *Peroza-Benitez v. Lawler*, 2011 WL 744762, *3 (E.D. Pa. 2-9-11)("to establish a claim of ineffective assistance of counsel, Petitioner must show both deficient performance and prejudice.")(citations omitted).

The Court in *Grant v. Wilson,* 2009 WL 222945, *6 (W.D. Pa. 1-29-09), stated:

> Because the *Strickland* test is one of objective reasonableness, it does not matter if counsel actually considered the course taken or foregone to determine whether the actions or omissions were objectively reasonable; so long as a hypothetical reasonable attorney could have done the same, there is no ineffectiveness. *Chandler v. United States,* 218 F.3d 1305, 1316 n. 16 (11th Cir.2000). In light of the strong presumption of counsel's effectiveness and the objective reasonableness standard, the Court of Appeals for the Third Circuit has explained, "[i]t

is [ ] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Kauffman,* 109 F.3d 186, 190 (3d Cir.1997) (*quoting United States v. Gray,* 878 F.2d 702, 711 (3d Cir. 1989)).

The second prong requires the Petitioner to show that the deficient performance prejudiced the defense to the extent that the Petitioner was deprived of a fair trial. *Strickland*, 466 U.S. at 687. In *Peroza-Benitez v. Lawler*, 2011 WL 744762 , *3-*4, the Court stated:

Recently, the United States Supreme Court explained the prejudice requirement for an ineffective assistance of counsel claim as follows:

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Harrington v. Richter,* --- U.S., ----, ---- - ----, 131 S.Ct., 770, 777-78, --- L.Ed.2d, ----, ---- - ---- (2011) (citations omitted).

Furthermore, a person claiming ineffective counsel has the burden of proving that he or she was prejudiced by the deficient performance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

As the *Grant* Court, 2009 WL 222945, *6, pointed out:

> In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because

21

> "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Buehl v. Vaughn,* 166 F.3d 163, 172 (3d Cir.1999). The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. *See Strickland,* 466 U.S. at 687; *Dooley v. Petsock,* 816 F.2d 885, 889 (3d Cir.1987). As a result, if a petitioner fails on either prong, he loses. *Holladay v. Haley,* 209 F.3d 1243, 1248 (11th Cir.2000); *Foster v. Ward,* 182 F.3d 1177, 1184 (10th Cir.1999).

The *Grant* Court further stated:

> "Th[e] Pennsylvania [ineffective assistance of counsel] standard has been found to be materially identical to the test enunciated in *Strickland v. Werts,* 228 F.3d at 203. The Third Circuit has ruled that this standard is not "contrary to" *Strickland,* and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of *Strickland* to [petitioner's] ineffectiveness claim was objectively unreasonable, *i.e.,* the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland."*

*Grant,*  2009 WL 222945, *8 *(citing Werts,* 228 F.3d at 204).

We find that since the Pennsylvania Superior Court decided Petitioner's ineffective assistance of trial counsel claims under standards that are basically the same as the *Strickland* standard, the Court should "apply the deferential standard of 28 U.S.C. § 2254(d), which requires that a habeas petitioner demonstrate that the State Court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law." *Grant,* 2009 WL 222945, *8. The Superior Court of Pennsylvania, in its October 18, 2007 decision affirming the trial court's judgment of sentence, entered after a jury trial, stated that Petitioner's allegations of ineffectiveness of trial counsel were analyzed as follows:

> This Court's review of the PCRA court's denial of Mandeville's petition for post-conviction relief is limited to determining whether the lower court's order is supported by the record and is otherwise free of error.

> *Commonwealth v. Granberry*, 644 A.2d 204, 207 (Pa. Super. 1994). In
> review an allegation of ineffectiveness of counsel, this Court starts with the
> presumption that counsel was effective. *Commonwealth v. D'Collanfield*,
> 805 A.2d 1244, 1246 (Pa. Super. 2002). The defendant bears the burden
> of proving that counsel was ineffective. *Id.*
>
> To overcome the presumption of competence, the defendant must
> establish that: (1) his underlying claim has arguable merit; (2) the particular
> course of conduct pursued by counsel did not have some reasonable basis
> designed to effectuate the defendant's interests; and (3) but for counsel's
> ineffectiveness, there is a reasonable probability that the outcome of the
> proceeding would have been different. *Commonwealth v. Bomar*, 573 Pa.
> 426, 826 A.2d 831, 855 (2003), cert denied, 540 U.S. 1115 (2004). Failure
> to satisfy the prong of the test for ineffectiveness requires rejection of the
> claim. *Id.*

(Doc. 70, Ex. #3, pp. 481-491).

With respect to his ineffective assistance of counsel Ground Three, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se
> ineffective for failing to object to the court['s] charge which
> misdefined the concept of reasonable doubt. This violated
> Petitioner's Right to Counsel, as guaranteed by Amendments 6 and
> 14 to the U.S. Constitution.

(*Id.*).

Petitioner argues that the trial court erroneously instructed the jury regarding the concept

of reasonable doubt by equating "reasonable doubt" with the phrase "real doubt" diluting the

Commonwealth's burden of proof. (Doc. 51, pp. 39-43).

The Superior Court of Pennsylvania found that Petitioner's first contention of ineffective

assistance of counsel claim was without merit and the Petitioner's framing of the issue failed the

*Bomar* test. (Doc. 70, Ex. #3, p. 488). Specifically, the Superior Court stated, Mandeville

(Petitioner) argues that the trial Court improperly defined reasonable doubt when stating "real

doubt must be a real doubt" and a "reasonable doubt must be a real doubt." The Court went on

to explain that although it does not appear in the Suggested Criminal Jury Instruction 7.01, there is no error, there is no indication of the weight necessary, only that it need be an actual doubt. *Id*. Therefore, the Superior Court concluded that counsel could not be ineffective for raising a meritless objection. *Id.*

We find that the Superior Court's decision is not contrary to Supreme Court precedents or unreasonable application of Federal law. We find that Petitioner's argument is meritless although Petitioner brings up his concerns raised by the term "substantial doubt," they are not present in the phrase "real doubt" which was the phrase used in the trial court's jury instructions. *Id.*

Regarding his ineffective assistance of counsel Ground Four, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to object to the Trial Court's instruction which removed Commonwealth's burden of proving specific intent of Petitioner, in this multi-accomplice case without first finding that Petitioner had the requisite specific intent to kill. This violated Petitioner's Right to Counsel, as guaranteed by Amendments 6 and 14 to the U.S. Constitution.

(*Id.*, p. 23).

The Superior Court of Pennsylvania found that Petitioner's Ground Four contention of ineffective assistance of counsel claim was without merit, specifically stating that the trial court specifically instructed the jury, "[t]he intent of promoting or facilitating the commission of the crime of first degree murder requires the Defendant acted with a specific intent to kill." (Citation omitted). The Superior Court further noted the jury instruction in relation to accomplice liability which was used, "the intent of promoting or facilitating the commission of the crime of first degree murder requires the Defendant acted with a specific intent to kill." (Citations omitted). The

24

Superior Court stated that Petitioner's claim lacks merit as he selectively relies on part of the record which supports his claim instead of the entire jury instruction given by the trial court.  (Doc. 70, Ex. #3, p. 488).  We agree with the Superior Court that Petitioner's claim lacks merit in light of the entire jury instruction given by the trial court which included "specific intent."   Therefore, Petitioner's claim clearly does not meet the *Strickland* standard for ineffective assistance of counsel and the Superior Court's decision was not contrary to Supreme Court precedents or unreasonable application of Federal law.

As his ineffective assistance of counsel Ground Five, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to object to improper remarks by the prosecutor which were prejudicial and improper, and indulged in personal assertions of the Defendant's guilty (sic).  This violated Petitioner's Right to Counsel and Right to Fair Trial, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id*.).

Petitioner argues that counsel was ineffective for not objecting to remarks made by the prosecutor in his closing argument during the trial which Petitioner argues made him appear to be lying and were unduly prejudicial and inflammatory.  Petitioner contends that his trial counsel did not have a reasonable basis designed to effectuate Petitioner's interests when he failed to object. (Doc. 51, p. 68).  Respondent argues that the prosecutor's comments were arguments and  not said in terms of being the prosecutor's personal opinion.  (Doc. 64, p. 17).  The state court opined that Petitioner raised the allegations in a vacuum and after review of the alleged improper remarks after the PCRA hearing found the remarks not to be improper and the allegations meritless.  (Doc. 70, Ex. #3, p. 410).  We agree, Pennsylvania law clearly allows a prosecutor to argue the evidence

introduced at trial which shows the criminal defendant is lying. *Commonwealth v. Johnson*, 588 A.2d 1303, 1305-06 (Pa. 1991); *Commonwealth v. Hall*, 554 A.2d 919 (Pa. Super. 1989); *Commonwealth v. Hill*, 549 A.2d 199 (Pa. Super. 1988). Therefore, Petitioner's claim on this ground is meritless and clearly does not rise to the level of ineffective assistance of counsel.

In his ineffective assistance of counsel Ground Six, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to elicit favorable testimony from Linda Lopatofsky regarding her testimony about her telephone conversation with the victim relative to a female requesting assistance from the victim around the time of the crime. This violated Petitioner's Right to Counsel and Right to Fair Trial, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*, p. 24).

Respondent argues that Petitioner has not clearly explained what he believes could have been developed through further cross-examination of Linda Lopatofsky. (Doc. 64, p. 18). Respondent further states that the testimony of Petitioner's counsel at the PCRA hearing solidified the fact that Petitioner's counsel believed the testimony of Linda Lopatofsky was actually favorable to Petitioner and any examination by defense counsel could have potentially revealed damaging information to Petitioner's criminal case. *Id.* Therefore, Respondent states that it appears to be a sound decision of trial strategy and does not indicate ineffective assistance of counsel. The state court agreed citing, *Commonwealth v. Blackwell*, 647 A.2d 915 (Pa. Super. 1994) , "the test is not absolutely whether other alternatives were more reasonable, but whether counsel's decision had any reasonable basis to advance the interest of the defendant." (Doc. 70, Ex. #3, p. 407). We agree with Respondents. Counsel's decision not to cross examine the witness does not rise to the level of *Strickland*.

In his ineffective assistance of counsel Ground Seven, Petitioner states:

> Ineffective Assistance of Counsel, specifically trial counsel was per se ineffective for failing to elicit favorable testimony from Commonwealth's witness, Kathleen Torrick, by asking her if the Defendant was one of her assailants. This violated Petitioner's Right to Counsel and Right to Fair Trial, as guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.

(*Id.*, p. 26).

This claim is essentially the same as Ground Six discussed above and the analysis is the same. Once again, Respondent argues that Petitioner has not clearly explained what he believes could have been developed through cross-examination of Kathleen Torrick by his counsel. Furthermore, Respondent notes that the testimony of Petitioner's counsel at the PCRA hearing solidifies the fact that counsel believed the testimony of Kathleen Torrick was favorable to Petitioner as she had not identified him on direct examination and any examination could have potentially revealed damaging information to Petitioner's criminal case. (Doc. 64, p. 20). The state court agreed that trial counsel's tactics were reasonable. (Doc. 70, Ex. #3, p. 407). As we stated above in regard to Ground 6, this is appears to be a sound decision of trial strategy and does not indicate ineffective assistance of counsel. Thus, we find that Petitioner has not shown his trial counsel was ineffective with respect to Ground Six under *Strickland*.

Petitioner's ineffective assistance of counsel Ground Eight is as follows:

> Ineffective Assistance of Counsel on Appeal, specifically appellate counsel (who was the same as trial counsel) failed to federalize (*i.e.* state a federal question for federal review) on appeal regarding issue #2 on direct appeal relating to the Trial Court allowing into evidence testimony and other evidence relating to other crimes allegedly committed by the Defendant. This violated Petitioner's Right to Counsel, Right to Fair Trial and Right to Due Process and Equal

> Protection, as guaranteed by Amendments 5, 6 and 14 to the U.S.
> Constitution.

(*Id.*, p. 28).

Petitioner's claim #8 that his appellate counsel's failure to "federalize" the issue of whether the trial court erred by allowing into evidence testimony of other crimes committed by Defendant is confusing at best.  Petitioner appears not to clearly understand the concept of Federalization.  Petitioner concedes that he did not raise this issue on direct appeal, but he states that he raised it in his PCRA proceedings.  *See Mandeville*, 2009 WL 4110315, *1.  The evidence of other crimes which was offered during Petitioner's trial dealt with burglaries committed by Petitioner which were introduced by the prosecutor to show a common plan, scheme and motive.  Petitioner states that he tried to raise this claim in his appeal of his first PCRA Petition with the Pennsylvania Superior Court and that the Superior Court deemed this issue waived because his counsel did not follow the PA rules of appellate procedure.

The record shows that claim #10 of Petitioner's Amended PCRA Petition, filed with respect to his first PCRA Petition dated January 19, 2001, was that his right to effective assistance of counsel was violated by trial counsel's failure to federalize his issues #2 through #10 on his direct appeal.  Petitioner cited to *Smith v. Robbins*, 528 U.S. 259 (2000).  (*See* Doc. 70, Vol. 2, p. 311).  In response to Petitioner's Amended PCRA Petition and his claim of ineffective assistance of counsel for failing to federalize multiple issues during his direct appeal, the Wayne County District Attorney stated as follows:

> Whether Trial Counsel was ineffective for failing to "federalize" multiple
> issues during the Appellant's direct appeal?

**DISCUSSION: ISSUE XII**

The Appellant fails to specify precisely what he means when he alleges that there was a failure to "federalize" multiple issues during his direct appeal. As noted earlier, Pennsylvania Rule of Criminal Procedure No. 902(A)(11) and (12) requires that the Appellant seeking PCRA relief set froth the grounds for relief and the facts supporting each such ground.   The blanket assertion that nine issues should have been "federalized" without anything more is improper. *See,* <u>Commonwealth v. Rivers</u>, 567 Pa. 239, 786 A.2d 923 (2001).

Although it can be inferred that the Appellant believes that some type of federal claim should have been incorporated into his direct appeal, it is impossible from his Amended Motion to divine precisely what that claim or those claims might be.   The Commonwealth should not be required to guess at the issues implicated by a[n] Appellant's PCRA Motion.   In this case the confusion is heightened because the case of <u>Smith vs. Robbins</u>, 528 U.S. 259 (2000) is cited by the Appellant has nothing to do with "federalizing" issues. Instead, it runs nearly forty pages long and only addresses the requirements and standards applicable to Anders briefs.

The Appellant's pleading of this issue clearly does not satisfy that requirement of Rule 902 and this failure justifies the denial of this claim.

(*See* Doc. 70, Vol. 2, pp. 438-439).

The trial court sitting as the PCRA court denied Petitioner's PCRA Petition on December 5, 2006.  (*See* Doc. 70, Vol. 2, pp. 549-558).  The trial court did not consider Petitioner's claim of ineffective assistance of counsel for failing to federalize multiple issues during his direct appeal. (*Id.*).  Petitioner appealed the denial of his PCRA Petition to the Pennsylvania Superior Court.  In its October 18, 2007 decision affirming the denial of Petitioner's PCRA Petition, the Superior Court noted that  since Petitioner's statement of questions involved exceeded fifteen lines and one page, the Court was "constrained to find that the questions appearing on [Petitioner's] second and third pages of his statement of questions involved, *i.e.*, issues 7-17, have been waived."  The Superior Court cited to *Com. v. Poplawski*, 852 A.2d 323, 326, n, 3 (Pa. Super. 2004).  (*See* Doc. 70, Vol.

2, p. 484). *See also Com. v. Mandeville*, 943 A.2d 317 (Pa. Super. 2007).  Thus, the Superior Court did not consider the merits of Petitioner's issues 7-17, which included his claim of ineffective assistance of counsel for failing to federalize multiple issues during his direct appeal.

In Respondent DA's brief in response to Petitioner's instant habeas petition (Doc. 71, p. 22), he argues as follows with respect to Petitioner's claim #8:

> The Petitioner has failed to state a cause of action upon which relief can be granted, and therefore the petition on this issue must be denied.  The Petitioner's argument is confused, meandering, and completely misconstrues the concept of federalization.  The Petitioner is required to prove ineffectiveness with respect to some specific federal claim that was inadequately presented on direct appeal such that it could not be presented in a federal habeas corpus proceeding.  *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  Here, there are no specific federal claims so presented.

> Although it can be inferred that the Petitioner believes that some type of federal claim should have been incorporated into his direct appeal, it is impossible to divine from his petition precisely what that claim or those claims might be.

Although Petitioner's habeas claim #8 is certainly unclear, we construe Petitioner as claiming that his appellate counsel was ineffective for failing to preserve as a separate violation of the U.S. Constitution the claim that the trial court should not have allowed into evidence testimony and other evidence relating to other crimes allegedly committed by Petitioner.

As stated, in its October 18, 2007 decision, the Superior Court did not consider the merits of Petitioner's issues 7-17, which included his claim of ineffective assistance of counsel for failing to federalize multiple issues during his direct appeal.  The Superior Court found that these claims were waived.  Thus, Petitioner's habeas claim #8 was not properly presented to the state courts.  The Superior Court refused to address the merits of this claim for a procedural reasons, making this

30

claim procedurally defaulted.  *See Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996)(citation

omitted).  In *Ford v. Varano*, 2010 WL 276756, *5 (E.D. Pa. 1-19-1), the Court stated:

> The procedural default barrier, in the context of habeas corpus, precludes
> federal courts from reviewing a state petitioner's habeas claims if the state
> court decision is based on a violation of state procedural law that is
> independent of the federal question and adequate to support the judgment.
> *Coleman v. Thompson,* 501 U.S. at 729. "In the context of direct review of a
> state court judgment, the independent and adequate state ground doctrine is
> jurisdictional ... [b]ecause this Court has no power to review a state law
> determination that is sufficient to support the judgment." *Id.* Although the
> issue of procedural default is best addressed by the state courts in the first
> instance, a federal court may dismiss a petition as procedurally barred if state
> law would unambiguously deem it defaulted. *Carter v. Vaughn,* 62 F.3d 591,
> 595 (3d Cir.1995).
>
> If the petitioner presented a claim, but the state court refused to address the
> merits of the claim for some procedural reason, the claim is procedurally
> defaulted. *Sistrunk v. Vaughn,* 96 F.3d at 673 (citing *Coleman v. Thompson,*
> 501 U.S. at 750).

In the present case, Petitioner Mandeville tried to present his federalization claim to the

Superior Court on collateral appeal, but the Superior Court found that this claim was waived on

state procedural grounds.  Thus, as the *Ford* Court stated:

> To survive procedural default in the federal courts, the petitioner must either
> "demonstrate cause for the default and actual prejudice as a result of the
> alleged violation of federal law, or demonstrate that failure to consider the
> claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S.
> at 750. To establish the fundamental miscarriage of justice exception,
> petitioner must demonstrate his "actual innocence." *Schlup v. Delo,* 513 U.S.
> 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *Calderon v.
> Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 1503, 140 L.Ed.2d 728
> (1998). On the other hand, a showing of cause demands that a petitioner
> establish that "some objective factor external to the defense impeded
> counsel's efforts to comply with the State's procedural rule." *Coleman,* 501
> U.S. at 753. Once cause is proven, petitioner must also show that prejudice
> resulted from trial errors that "worked to [petitioner's] actual and substantial
> disadvantage, infecting his entire trial with error of constitutional dimensions."
> *Murray v. Carrier,* 477 U.S. 478, 494, 106 S.Ct. 2639, 2648-49, 91 L.Ed.2d

397 (1986).

*Id*.

We do not find that Petitioner Mandeville has satisfied either exception to survive the procedural default of his claim #8. As discussed in this R&R, and based on the voluminous record submitted in this case, we find that Petitioner Mandeville has not proven actual innocence. In fact, we find that record shows substantial evidence existed to support Petitioner's conviction. We also find that Petitioner Mandeville has not shown cause and prejudice.

The record in this case shows that prior to Petitioner's trial, the DA filed two Motions *in Limine* for permission of the trial court to allow the Commonwealth to introduce into Petitioner's trial evidence regarding Petitioner's involvement with Michael Wilson and Edward Buda in a July 1996 incident in Wayne County at the house of Kathleen Torrick when two masked persons came into her house, duct taped her and knocked her on the floor and kicked her in the head, and then went through her house, and to allow the Commonwealth to introduce into Petitioner's trial evidence regarding Petitioner's involvement in a November 1996 burglary. The DA argued that this evidence would "be used to establish the conspiracy among Mandeville, Buda and Wilson, common scheme or design, intent and motive." (*See* Doc. 71, Vol. 1, pp. 15-21). On February 3, 1998, the trial court issued an Order and granted the DA's Motion *in Limine* and held that "the evidence of the crimes charged in No. 310-1997 Criminal and 287-1997 Criminal [Wayne County Court of Common Pleas] will be admissible at Trial in [Petitioner's criminal case] for the limited purposes of showing a relationship between co-conspirators, a common plan or scheme, motive or intent." The trial court also stated that it would give the jury a limiting instruction regarding this

32

evidence of other crimes.  (*Id.*, p. 25).

Thus, the trial court found that this evidence of other crimes was admissible in Petitioner's trial under Pa. Rule of Evidence 404(b).  Based on the record, we do not find that Petitioner has demonstrated that the failure of this federal Court to consider his claim #8 will result in a fundamental miscarriage of justice.  The other crimes evidence was found by the trial court to be admissible under the state's rules of evidence.  Petitioner's claim #8 is a state law claim that the trial court abused its discretion in granting the DA's Motion *in Limine* and in allowing the other crimes evidence in Petitioner's trial.  As stated, Petitioner did not exhaust this claim as a federal claim and he is not able to return to state court to exhaust it.  Thus, it is procedurally defaulted. *Ford, supra*. Also, we have found that Petitioner has not demonstrated cause and prejudice and that he has not demonstrated that he is actually innocent.  *Id*.

Moreover, we do not find that Petitioner is asserting a constitutional violation with respect to his claim #8 which would entitle him to habeas relief.  As the *Ford* Court stated:

> The writ of habeas corpus does not serve to remedy all errors in state trials, but rather to protect against fundamental defects that inherently result in a complete miscarriage of justice. *United States v. DeLuca,* 889 F.2d 503, 506 (3d Cir.1989). "Habeas claims which rely exclusively upon state law in asserting error in a state court's evidentiary ruling, like any other assertion of state court error in the application of state law, are not cognizable on habeas review." *Israel v. Lawler,* Civ A. No. 08-4175, 2009 WL 805138, 6 n. 12 (E.D.Pa. March 19, 2009). State court evidentiary errors are not cognizable in federal habeas corpus proceedings unless the error deprives a defendant of a federal Constitutional right. *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

*Ford v. Varano*, 2010 WL 276756, *10.

In our case, Petitioner generally claims that his due process right was violated by his appellate counsel's failure to federalize his claim about the the trial court's alleged erroneous evidentiary ruling regarding the admissibility of the other crimes evidence presented at his trial. As the *Ford* Court held, "[t]hese alleged violations of state law, which we do not find deprived [Petitioner] of fundamental fairness in his criminal trial, cannot alone serve as the basis for habeas relief." *Ford v. Varano*, 2010 WL 276756, *11(citation omitted).

Therefore, we will recommend that Petitioner's claim in Ground Eight of his habeas petition be denied.

Finally, Ground Nine of his ineffective assistance of counsel claims reads:

> Ineffective Assistance of Counsel, specifically counsel was ineffective for the cumulative effect of all or any of the previously raised ground for ineffective assistance of counsel.  This violated Petitioner's Right to Counsel, Right to Fair Trial and Right to Due Process, as guaranteed by Amendments 5, 6 and 14 of the U.S. Constitution.

(*Id.*, p. 29).

Petitioner's Ground Nine claim has not been presented in state court in either his direct appeal or his PCRA Petition as Petitioner has  conceded.  (Doc. 1, p. 30).  In his final claim, Petitioner seeks relief based on the cumulative prejudicial effect of all of the constitutional violations he alleges. *Id.*  Errors that do not individually warrant habeas relief may do so when combined if their cumulative prejudice undermines the fundamental fairness of the trial.  *Fahy v. Horn*, 516 F.3d 169, 205 (C..A. 3 2008); *Albrecht v. Horn*, 485 F.3d 103, 139 (3rd Cir. 2006).  In evaluating cumulative prejudicial effect, the substantial and injurious effect standard applies. *Albrecht*, 485 F.3d at 139.  One way of asking the prejudice question is whether the "cumulative

prejudice resulting from the errors ... undermined the reliability of the verdict." *Id.*

We have not found any merit to any of Petitioner's ineffective assistance of counsel claims. Even if Petitioner's claims did have merit, their cumulative prejudicial effect could not rise to the level of a substantial and injurious effect given the overwhelming evidence of guilt against Petitioner presented at his trial. *Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321 (2007). We will therefore recommend that the Court deny Petitioner's claim in Ground Nine.

Based on the forgoing, we will recommend that the Court deny Petitioner's habeas petition with respect to all of his claims.

We will also recommend that the Court deny Petitioner's Motion for Relief from Judgment **(Doc. 28)** as moot. As stated above, we find that the U.S. Supreme Court's November 29, 2010 decision vacated Petitioner's Doc. 28 Motion.

In regard to Petitioner's Motion to Compel Discovery and Motion for Discovery, **(Docs. 73 and 74),** we will recommend that the Court deny both motions as unnecessary as any further discovery would not benefit the Petitioner or the Court.

In *Brown v. DiGuglielmo,* Not Reported in F.Supp.2d, 2007 WL 4242266, *1, n. 2 (E.D.Pa.,2007) the Court stated:

> "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). Rule 6(a) of the Rules Governing § 2254 cases reads as follows: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." The requisite good cause for discovery in a habeas action is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy,* 520 U.S. at 908-09 (quoting *Harris v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)); *see also* Advisory

Committee's Note on Habeas Corpus Rule 6, 28 U.S.C., p. 479 (noting that Habeas Corpus Rule 6 is meant to be "consistent" with *Harris* ); 26 James Wm. Moore et al., Moore's Federal Practice § 671.03[7][a] (3d ed.2003). "[In such a case,] it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Id.* at 909 (quoting *Harris*, 394 U.S. at 300).

The court will deny Petitioner's motion for discovery, because there is no "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy,* 520 U.S. at 908-09.

*Id.*

In *Williams v. Beard,* 637 F.3d 195,211-212 (C.A.3 2011) the Court stated:

Accordingly, habeas petitioners are entitled to discovery only upon a showing of "good cause," and even then, the scope of discovery is subject to a district court's sound discretion. *See Harris v. Nelson,* 394 U.S. 286, 299–300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) (discussing pre-Rule 6 discovery standard); *Bracy v. Gramley,* 520 U.S. 899, 909, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (explaining that Rule 6 was meant to be consistent with *Harris*); *see also Deputy v. Taylor,* 19 F.3d 1485, 1493 (3d Cir.1994) ("A district court sitting in a habeas case retains the discretion to permit additional discovery if the petitioner presents 'good cause' to do so."). A habeas petitioner may satisfy the "good cause" standard by setting forth specific factual allegations which, if fully developed, would entitle him or her to the writ. *See Harris,* 394 U.S. at 300, 89 S.Ct. 1082; *see also Lave v. Dretke,* 416 F.3d 372, 380 (5th Cir.2005). The burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production. R. 6(b) R. Gov. § 2254 Cases; *Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir.2004); *Murphy v. Johnson,* 205 F.3d 809, 814–15 (5th Cir.2000).

*Id.*

Accordingly, based on the forgoing, we recommend the Court deny Petitioner's Motion to Compel Discovery and Motion for Discovery, **(Docs. 73 and 74),** as unnecessary as any further discovery would not benefit the Petitioner or the Court and good cause has not been shown for their need.

**V.  Recommendation.**

Based on the foregoing, we respectfully recommend that Petitioner's Habeas Petition (**Doc. 1**) be denied on its merits.  We also recommend that Petitioner's Motion for Relief from Judgment **(Doc. 28)** be denied as moot and, that  Petitioner's Motion to Compel Discovery and Motion for his Discovery **(Docs. 73 and 74)** also be denied.

<div style="margin-left:40%">

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

</div>

**Dated: February 22, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID ELTON MANDEVILLE,　　　　:CIVIL ACTION NO. **3:CV-09-1125**
　　　　　　　　　　　　　　　　　:
　　　　　　　Petitioner　　　　　:　　　(Judge Caputo)
　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　:　　　(Magistrate Judge Blewitt)
　　　　　　　　　　　　　　　　　:
PAUL K. SMEAL,　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　Respondent　　　　　:

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 22 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                          **s/ Thomas M. Blewitt**
                          **THOMAS M. BLEWITT**
                          **United States Magistrate Judge**

**Dated: February 22, 2012**