**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DAVID ELTON MANDEVILLE,

      Petitioner,

        v.

PAUL K. SMEAL,

      Respondent.

CIVIL ACTION NO. 3:CV-09-1125

(JUDGE CAPUTO)

(MAGISTRATE JUDGE BLEWITT)

## MEMORANDUM

Presently before the Court is Magistrate Judge Blewitt's Report and Recommendation ("R & R") (Doc. 79) to Petitioner David Mandeville's Petition for Writ of Habeas Corpus (Doc. 1), Motion for Relief from Judgment (Doc. 28), Motion for Respondent to Furnish Missing Records (Doc. 73), and Motion for Discovery (Doc. 74.)  The Magistrate Judge recommends that the Petition be denied with respect to all claims, the motion for relief from judgment be denied as moot, and the discovery motions be denied.  Petitioner filed timely objections to the R & R.  Because Petitioner was not denied effective assistance of counsel and the state court reasonably determined that Petitioner failed to invoke his right to counsel during his custodial interrogations, the Petition for a writ of habeas corpus will be denied.

### I. Background

On June 15, 2009, Petitioner, an inmate at SCI-Smithfield, Huntingdon, Pennsylvania, filed, *pro se*, the instant Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. (Doc. 1.)  In 1998, Petitioner was sentenced to life in prison after he was convicted of first degree murder, robbery, burglary, theft by unlawful taking, and criminal conspiracy in the Court of Common Pleas of Wayne County, Pennsylvania. (*Id*.)  Petitioner now challenges his conviction and sentence. (*Id*.)

The Petition raises nine claims for relief.  In Ground One, Petitioner states that he was questioned by police and denied counsel, despite his request; this issue was raised by

Petitioner on direct appeal, but not in his Post Conviction Relief Act (""PCRA") proceedings. (*Id*.) Ground Two is for the trial court's refusal to excuse a juror who knew the victim's brother and son in Petitoner's trial; this issue was raised by Petitioner on direct appeal, but not his PCRA proceedings. (*Id*.)[1] Ground Three alleges that the trial court gave an improper jury instruction regarding the definition of reasonable doubt; Petitioner did not raise this issue on direct appeal, but did raise it in his PRCA proceedings. (*Id*.) Ground Four relates to trial counsel's failure to object to a jury instruction regarding the burden of proving the specific intent to kill; Petitioner did not raise this issue on direct appeal, but did raise it in his PRCA proceedings. (*Id*.) Grounds Five, Six and Seven raise the issue of ineffective assistance of counsel for trial counsel's failure to object to improper remarks made by the prosecutor, and failure to elicit favorable testimony from two witnesses; Petitioner did not raise these issues on direct appeal, but did raise them in his PRCA proceedings. (*Id*.) Ground Eight claims ineffective assistance on the part of appellate counsel; Petitioner did not raise this issue on direct appeal, but did raise it in his PRCA proceedings. (*Id*.) Finally, Ground Nine argues that "counsel was ineffective for the cumulative effect of all or any of the previously raised grounds for ineffective assistance of counsel." (*Id*.)

## II. Relevant Procedural History

As set forth in Magistrate Judge Blewitt's R & R, following his March 19, 1998 life sentence, Petitioner filed a post-sentence motion with the trial court claiming the evidence was insufficient to support his conviction. (Doc. 79, 8.) The trial court denied this motion on April 6, 1998. (*Id*.) Petitioner then filed a direct appeal with the Pennsylvania Superior Court on May 1, 1998. (*Id*.) Petitioner raised the issues asserted in Grounds One and Two

---

[1]    Petitioner has withdrawn this claim. (Docs. 72; 82.)

of the instant Petition on direct appeal with the Superior Court. (*Id*.)[2]  The Superior Court affirmed his judgment of conviction on August 3, 1999. (*Id*. at 9.)  Next, on February 4, 2000, the Pennsylvania Supreme Court denied Petitioner's request for permission for allowance to file an appeal. (*Id*.)

Petitioner then filed a PCRA Petition on January 19, 2001 in the Court of Common Pleas. (*Id*. at 10.)  The PCRA court vacated Petitioner's conviction for theft by unlawful taking but denied the remainder of the PCRA Petition on December 5, 2006. (*Id*.) Petitioner, on January 2, 2007, filed an appeal regarding the trial court's disposition of his PCRA Petition. (Id.)  The Superior Court, on October 18, 2007, found that the Petitioner's January 19, 2001 Petition was not timely filed and affirmed the trial court's order denying the Petition. (*Id*.)  Additionally, the Superior Court noted that even if Petitioner had timely filed his PCRA Petition, none of the issues complained of on appeal merited relief. (*Id*. at 11.)

Thereafter, on November 16, 2007, Petitioner filed a Petition for Allowance of Appeal regarding the Superior Court's October 18, 2007 decision. (*Id*.) The Pennsylvania Supreme Court denied Petitioner's request on March 2, 2009. (*Id*.)

On May 1, 2009, Petitioner filed an amended PCRA petition with the Court of Common Pleas of Wayne County.  (*Id*.)  This petition was dismissed by the Court of Common Pleas on December 14, 2009. (*Id*.)

Petitioner commenced the instant habeas action in this Court on June 15, 2009.  On November 23, 2009, the Court dismissed Petitioner's Writ of Habeas Corpus finding that the Petition had been untimely filed. (*Id*. at 12)  The Third Circuit affirmed the denial of

---

[2]      Petitioner also raised in his direct appeal with the Superior Court the claim that the trial court improperly admitted evidence relating to other crimes, acts, or wrongs which underlies the claim in Ground Eight.

3

Petitioner's Petition on July 18, 2010. (*Id*.)

On August 3, 2010, the Pennsylvania Superior Court affirmed the decision of the Court of Common Pleas to dismiss Petitioner's amended PCRA petition.  However, the Superior Court acknowledged that it miscalculated the time in determining that Petitioner's original PCRA Petition was untimely filed. (*Id*.)

As a result of the Superior Court's August 3, 2010 decision, the United States Supreme Court remanded this matter to the Third Circuit. (*Id*.)  The Third Circuit then remanded the case to this Court on January 5, 2011. (*Id*.)

### III. The Report and Recommendation

On February 22, 2012, Magistrate Judge Blewitt issued a Report and Recommendation recommending that the instant Petition be denied on the merits. (*Id*. at 37.)  The Magistrate Judge also recommends that the Motion for Relief from Judgment (Doc. 28) be denied as moot and the discovery motions (Docs. 73; 74) be denied.  As noted, Ground One of the Petition asserts that "evidence was obtained and introduced against Petitioner as a result of questioning by police that continued after Petitioner stated that he wished to consult an attorney." (Doc. 1.)  Magistrate Judge Blewitt concludes that Petitioner is not entitled to habeas relief on this Ground because "at no time in this case did Petitioner specifically request counsel.  He was given his *Miranda* warnings on four occasions and engaged in discussions with the police after waiving his *Miranda* rights on all occasions." (Doc. 79, 18.)

Grounds Three through Nine raise ineffective assistance of counsel claims. (Doc. 1.)  According to Magistrate Judge Blewitt, these claims should be analyzed under the "deferential standard of 28 U.S.C. § 2254(d)" "since the Pennsylvania Superior Court decided Petitioner's ineffective assistance of trial counsel claims under standards that are basically the same as the *Strickland* standard." (Doc. 79, 22.)  Applying the deferential §

4

2254(d) standard, Magistrate Judge Blewitt finds that Ground Three fails to raise a viable ineffective assistance of counsel claim because the Superior Court's decision that the trial court did not dilute the Commonwealth's burden of proof by equating "reasonable doubt" with the phrase "real doubt" is not contrary to Supreme Court precedent or an unreasonable application of federal law. (*Id*. at 23-24.)

Ground Four asserts that trial counsel was ineffective for "failing to object to the Trial Court's instruction which removed the Commonwealth's burden of proving specific intent of Petitioner, in this multi-accomplice case without first finding that Petitioner had the requisite specific intent to kill." (Doc. 1.) The Magistrate Judge concludes that Ground Four lacks merit because "the entire jury instruction given by the trial court . . . included 'specific intent.'" (Doc. 79, 25.)

Petitioner's next claim of ineffective assistance by trial counsel, Ground Five, asserts that "trial counsel was *per se* ineffective for failing to object to improper remarks by the prosecutor which were prejudicial and improper, and indulged in personal assertions of the Defendant's guilty (sic)." (Doc. 1.) The Magistrate Judge finds Ground Five to lack merit because "Pennsylvania law clearly allows a prosecutor to argue the evidence introduced at trial which shows the criminal defendant is lying." (Doc. 79, 25-26.)

As to Ground Six, "trial counsel was *per se* ineffective for failing to elicit favorable testimony from Linda Lopatofsky," (Doc. 1), Magistrate Judge Blewitt asserts that "counsel's decision not to cross examine the witness does not rise to the level of *Strickland*." (Doc. 79, 26.) Ground Seven raises a similar argument, "trial counsel was *per se* ineffective for failing to elicit favorable testimony from Commonwealth's witness, Kathleen Torrick, by asking her if the Defendant was one of her assailants." (Doc. 1.) The Magistrate Judge rejects Petitioner's ineffective assistance argument finding that the decision not to cross examine Ms. Torrick was a sound decision of trial strategy. (Doc. 79, 27.)

5

Ground Eight asserts that "appellate counsel (who was the same as trial counsel) failed to federalize (*i.e.* state a federal question for federal review) on appeal regarding issue #2 on direct appeal." (Doc. 1.)  Magistrate Judge Blewitt reasons that "Petitioner did not exhaust this claim as a federal claim and he is not able to return to state court to exhaust it.  Thus, it is procedurally defaulted.  Also, we have found that Petitioner has not demonstrated cause and prejudice and that he has not demonstrated that he is actually innocent." (Doc. 79, 33.)

As to Petitioner's final claim, Ground Nine, Petitioner asserts that "counsel was ineffective for the cumulative effect of all or any of the previously raised grounds for ineffective assistance of counsel." (Doc. 1.)  Due to the overwhelming evidence of guilt, the Magistrate Judge concludes that the cumulative prejudicial effect of the errors did not rise to a level of substantial and injurious effect. (Doc. 79, 35.)

The Magistrate Judge also recommends that Petitioner's Motion for Relief from Judgment (Doc. 28) be denied as moot.  Additionally, based on his recommendations to the merits of Petitioner's claims, Magistrate Judge Blewitt recommends denying Petitioner's discovery motions because further discovery would not benefit the Petitioner or the Court.

Petitioner filed timely objections to the R & R. (Doc. 82.)  As such, Magistrate Judge Blewitt's recommendations, and Petitioner's objections thereto, are ripe for disposition.

## IV. Discussion

### A.   Relevant Legal Standards

#### 1.   Standard for Reviewing a Report and Recommendation

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)).  However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7

(3d Cir. 1984) (emphasis added).  In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).   Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F.Supp. 328, 330 (M.D. Pa.1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Goney, 749 F.2d at 7.  At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F.Supp. 375, 376–77 (M.D. Pa. 1998).

### 2.    Habeas Corpus Petitions Pursuant to 28 U.S.C. § 2254

The instant Petition was filed pursuant to 28 U.S.C. § 2254.  Section 2254 allows a federal court to grant habeas corpus relief to prisoners "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Since it was filed after April 1996, the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Wilson v. Beard*, 589 F.3d 651, 657 (3d Cir. 2009).

Section 2254(b) provides, in pertinent part:

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

   (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i) there is an absence of available State corrective process; or

       (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

7

> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(b).  Ordinarily, a state prisoner must exhaust his federal claims in state court before seeking habeas relief in federal court. *See Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 657 (3d Cir. 2011) (citing *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000)).  "Exhaustion requires a petitioner to 'fairly present' his federal claims to the pertinent state court before bringing those claims to federal court." *Id.* (quoting *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007)).  "The exhaustion requirement is deemed satisfied when a petitioner has presented his claims to the state courts but the state courts have refused to consider the claims on the merits based on an independent and adequate state procedural rule." *Id.* (quoting *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008)).  Thus, "a claim may be exhausted but still be deemed as defaulted under state law." *Id.*

When a petitioner properly presents federal claims to a state court and the state court considers the merits of the federal claims, AEDPA's deferential standard of review applies. *See Harris v. Ricci*, 607 F.3d 92, 96 (3d Cir. 2010).  Under § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  For purposes of § 2254(d)(1), "'clearly established law as determined by [the Supreme Court] refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Adamson v. Cathel*, 633 F.3d 248, 255 (3d Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).  Review under § 2254(d)(1) "is limited to . . . the record

before the state court." *Cullen v. Pinholster*, - - - U.S. - - -, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).

"[A] federal court may [generally] not conduct habeas corpus review of a claim which a petitioner has procedurally defaulted in state court," *Lark v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 596, 611 (3d Cir. 2011), because "[a] federal court may not review 'a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Wilson*, 589 F.3d at 658 (quoting *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).   When a procedural rule bars a federal claim, "federal review, however, is available if the procedural rule that the state court applied to bar a federal claim was not 'independent' and 'adequate.'" *Lark*, 645 F.3d at 611 (citing *Albrecht v. Horn*, 485 F.3d 103, 115 (3d Cir. 2007)).   A state procedural rule is not an adequate bar to federal review "if it was not firmly established and regularly followed by the state courts at the time it was applied." *Id*.   Whether a rule is firmly established and regularly applied is determined as of the date the default occurred, and not as of the date the state court relied upon the rule. *Id*. (citing *Albrecht*, 485 F.3d at 115).

In cases where a claim is found to have been procedurally defaulted, there is no state-level adjudication on the merits to which a district court must defer. *Wilson*, 589 F.3d at 658 (citing *Bronshtein v. Horn*, 404 F.3d 700, 710 n.4 (3d Cir. 2005)).   Thus, the district court applies a *de novo* standard of review. *Id*. (citing *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

### 3.   *Strickland* Standard

The Sixth Amendment guarantees an accused in a criminal prosecution the right to assistance of counsel for his defense. The applicable federal precedent for ineffective assistance claims is the well-settled two-prong test established by the United States

Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The first prong of the *Strickland* test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 688.  It follows that when a petitioner claims that his counsel failed to raise a claim that the court determines to be meritless, habeas relief under *Strickland* is not available. *See Strickland*, 466 U.S. at 691 (failure to pursue "fruitless" claims "may not be challenged as unreasonable"); *see also United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999) (stating counsel cannot be deemed ineffective for failing to raise a meritless claim).  A court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, at 688–92.  The question is not whether counsel did not err, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place of counsel's conduct. *See id*.  To that end, a court must conduct an objective review of counsel's performance measured for reasonableness under prevailing professional norms, including a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time. *Id*. at 686; *see also Bobby v. Van Hook*, 558 U.S. 4, 130 S. Ct. 13, 16–20, 175 L. Ed. 2d 255 (2009).

The second prong of *Strickland* requires a petitioner to show that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

This standard "is not a stringent one;" it is less demanding than the preponderance standard. *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).   Further, a reviewing court need not determine whether counsel's performance was deficient before considering whether the petitioner suffered any prejudice as a result of the alleged deficiency. *Strickland*, 466 U.S. at 697.   If it is easier to dispose of an ineffectiveness claim for lack of requisite prejudice, that course should be followed. *Id*.[3]

## B.   Petitioner's Objections to the Report and Recommendation

Petitioner raises twenty objections to the Magistrate Judge's Report and Recommendation. (Doc. 82.)

### 1.   Objection One

Petitioner's first objection to the Report and Recommendation asserts that the Magistrate Judge erred in failing to review the entire state court record. (Doc. 72.) Specifically, Petitioner argues that "the Magistrate failed to file a Habeas Rule 5 Order, rely upon key transcripts/records, and review the entire state record." (Doc. 82.)   Petitioner contends that his ineffective assistance of counsel claims require the court to review the entire record, which Magistrate Judge Blewitt did not have before him in making recommendations on the instant Petition.

---

[3]     Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the *Strickland* test. *See, e.g., Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–77 (Pa.1987). The Third Circuit has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to *Strickland*. *Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005); *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).  Thus, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland*. *Jacobs*, 395 F.3d at 107 n.9; *Werts*, 228 F.3d at 204.  Further, under § 2254(d)(2), the relevant inquiry is whether the state court made unreasonable factual determinations when deciding whether the petitioner received constitutionally effective counsel. *Bond v. Beard*, 539 F.3d 256, 279 (3d Cir.2008).

In support of his objection, Petitioner relies on *Marshall v. Hendricks*, 307 F.3d 36 (3d Cir. 2002) and *Durham v. Piazza*, No. 07-4338, 2009 WL 2902275 (E.D. Pa. Sept. 9, 2009). In *Marshall*, the petitioner claimed that his counsel was ineffective during the guilt phase of his trial. *See Marshall*, 307 F.3d at 84. After the New Jersey Supreme Court rejected petitioner's claims as lacking merit, the petitioner sought a federal writ of habeas corpus. *See id*. The petition was denied by the district court. *See id*. On appeal, the Third Circuit found that the New Jersey Supreme Court's decision lacked an "essential aspect of any *Strickland* ruling . . . a sufficient record to probe the claimed ineffectiveness." *Id*. at 115. As such, the *Marshall* court concluded that:

> *Strickland* requires an analysis based on a complete record. The reviewing court's reasoning under the first prong needs to be made with an understanding of counsel's thought process . . . so that a conclusion whether counsel was ineffective can be made based on facts of record, rather than on assumptions. Similarly, the prejudice test requires that once the areas where counsel was found to be ineffective are identified, the redefined presentation must be measured against the reasonably probable outcome in a given case.

*Id*. The Third Circuit remanded the case "for a new ruling by the District Court as to *Strickland* based upon a complete record." *Id*. at 117.

Petitioner also asserts that a district court must review the entire state court record according to *Durham v. Piazza*, 2009 WL 2902275, at *2. In *Durham*, the petitioner objected to Magistrate Judge Perkin's recommendations to deny the petition for a writ of habeas corpus upon review of a partial state court record. *See id*. at *1. As characterized by the district court, "it appears from the Report and Recommendation that Magistrate Judge Perkin's review of the state court record was limited to the documents attached to the parties' filings with this Court." *Id*. at *3. The district court rejected the Report and Recommendation "in light of the fact that those recommendations are not based on a review of the entire state court record." *Id*. at *4. In recommitting the matter, however, the district court instructed the Magistrate Judge that "[a] review of the entire state court record is required with respect to some, but not necessarily all, of petitioner's claims. The court

12

leaves to Magistrate Judge Perkin the decision as to which claims require a review of the entire state court record and which do not." *Id*. at *5.

To the extent that Petitioner's position is that Magistrate Judge Blewitt could not conduct an adequate review of the instant Petition without the entire state court record, I disagree. While it is true that *Durham* indicated that the Magistrate Judge should review the entire state court record, it also held that the entire record need only be reviewed for some, not all, claims. *Id*. at *5. Moreover, in *Marshall*, the Third Circuit instructed the reviewing court to consider a "sufficient" or "complete" record to resolve the *Strickland* claim. *Marshall*, 307 F.3d at 115. *Marshall*, however, did not hold that the entire state court record must be reviewed in every habeas corpus proceeding.

A finding that the reviewing court need only consider the pertinent and relevant transcripts and documents in a habeas corpus proceeding is consistent with the Third Circuit's reasoning in *Fahy v. Horn*, 516 F.3d 169 (3d Cir. 2008). In *Fahy*, the petitioner claimed that "the failure to prepare and/or preserve the transcripts of his *voir dire* proceedings violated his rights to due process and a meaningful appeal." *Id*. at 190. Because the PCRA court dismissed the claim as untimely, the claim was never addressed on the merits, and the Third Circuit reviewed the claim *de novo*. *See id*. In rejecting the petitioner's claim, the *Fahy* court reasoned:

> It is indisputably true that a criminal defendant has the right to an adequate review of his conviction, *i.e.*, a sufficiently complete record. *Mayer v. City of Chicago*, 404 U.S. 189, 198, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971). However, as the District Court aptly pointed out, neither the Supreme Court, nor our Court, has held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief. This Court has recognized a defendant's request for a complete transcript only when the defendant has shown a "colorable need" for the transcript. *Karabin v. Petsock*, 758 F.2d 966, 969 (3d Cir. 1985) (citing *Mayer*, 404 U.S. at 195, 92 S. Ct. 410). Specifically, "[a] criminal defendant must first show a 'colorable need' for a complete transcript before the state must meet its burden of showing that something less will suffice." *Id*. Because Fahy has not shown a "colorable need" for the voir dire transcript, we will deny relief on this claim.

13

*Id*. Furthermore, the Rules Governing § 2254 Cases in the United States District Courts provide that "the respondent must attach to the answer parts of the transcript that the respondent considers *relevant*." *See* Rules Governing § 2254 Cases, Rule 5(c) (emphasis added); *see also* 28 U.S.C. § 2254(f) ("the applicant, if able, shall produce that part of the record *pertinent* to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record . . ."). Pursuant to this authority, and in the absence of a strict rule requiring a district court to review the entire state court record in every habeas proceeding, Petitioner's first objection to the Report and Recommendation will be overruled. Instead, the record as presented to the Magistrate Judge will be reviewed to determine whether his recommendations are supported by the record, and whether the Petition can be disposed of based on that record (*i.e.*- is the record sufficient) or whether the entire state court record is necessary to resolve Petitioner's claims.

## 2. Objections Two through Six

Objections two through six to the Report and Recommendation allege that the Magistrate Judge failed to apply the correct standard of review to Petitioner's habeas Grounds Four through Eight. (Doc. 82.) Petitioner argues that the state court did not adjudicate these claims on the merits because these Grounds were found by the Pennsylvania Superior Court to be procedurally defaulted. And, because the procedural ground relied on by the state court was not "adequate," Petitioner contends that the Magistrate Judge erred by applying the deferential standard of 28 U.S.C. § 2254(d).[4]

---

[4]     Magistrate Judge Blewitt determined Ground Eight was procedurally defaulted, (Doc. 79, 33), while Grounds Four through Seven were denied by the Superior Court on the merits. (*Id*. at 22.) Petitioner correctly notes that Grounds Five through Eight were denied by the Superior Court for a procedural violation. The

Petitioner asserts that the Magistrate Judge should have reviewed the claims *de novo*. I agree with Petitioner that the claims in Grounds Five through Eight were not procedurally defaulted and should be reviewed *de novo*. However, even under a *de novo* review, Grounds Five through Eight of the instant Petition will be denied as discussed in detail below.

Petitioner raised Grounds Five through Eight in his PCRA Petition. (Doc. 1.) After the PCRA court denied his PCRA Petition, Petitioner appealed to the Pennsylvania Superior Court raising seventeen issues on appeal. (Doc. 70, 539-40.) The Superior Court refused to address issues seven through seventeen of the appeal, which included Grounds Five through Eight of the instant habeas Petition, because Petitioner violated Rule 2116(a) of the Pennsylvania Rules of Appellate Procedure. At the time of the Superior Court's decision, Rule 2116(a) provided:

> The statement of questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception . . . .

(*Id*. at 539.) And, because Petitioner's statement of questions involved exceeded fifteen lines and one page, the Superior Court concluded "that the questions appearing on Mandeville's second and third pages of questions involved, *i.e.*, issues 7-17, have been waived." (*Id*. at 540.) Thus, contrary to the Magistrate Judge's finding, the Superior Court did not decide all of Petitioner's ineffective assistance of counsel claims on the merits. (Doc. 79, 22.) Rather, the Superior Court denied Grounds Five through Eight for procedural reasons.

---

Superior Court did, however, reject Ground Four on the merits. (Doc. 70, 546-47.) In that regard, objection two asserting that Ground Four was not adjudicated on the merits will be overruled.

The Third Circuit, in an unpublished decision, has previously held that "Rule 2116(a) is not 'adequate' because it is not 'regularly followed.'" *Nolan v. Wynder*, 363 F. App'x 868 (3d Cir. 2010) (quoting *Szuchon v. Lehman*, 273 F.3d 299, 325 (3d Cir. 2001)).  In *Nolan*, the Pennsylvania Superior Court addressed the merits of only four of the petitioner's claims on appeal of the decision of the PCRA court because the petitioner's statement of questions involved was three pages long, in direct violation of Rule 2116(a). *See id*. at 870.  The petitioner subsequently filed a petition for a federal writ of habeas corpus. *See id*.  The district court concluded that the claims not addressed by the Superior Court "were procedurally defaulted due to [the petitioner's] failure to adequately present them to the Superior Court in accordance with Rule 2116(a)." *Id*. at 871.

The Third Circuit vacated the district court's decision because "caselaw demonstrates that Pennsylvania courts prior to [the petitioner's] purported procedural default routinely addressed the substantive merits of claims despite a party's failure to comply with the mandatory page limitation imposed by Rule 2116(a)." *Id*. at 871-72 (citing *Commonwealth v. Stafford*, 749 A.2d 489, 493 (Pa. Super. Ct. 2000); *Conner v. Quality Coach, Inc.*, 724 A.2d 379, 383 n.5 (Pa. Super. Ct. 1999), *rev'd on other grounds*, 561 Pa. 397, 750 A.2d 823 (2000);  *Sell v. Sell*, 714 A.2d 1057, 1059 (Pa. Super. Ct. 1998); *Brown v. Phila. Tribune Co.*, 447 Pa. Super. 52, 668 A.2d 159, 161 n.1 (1995); *Estate of Lakatosh*, 441 Pa. Super. 133, 656 A.2d 1378, 1380 (1995)).  Indeed, since Petitioner's PCRA appeal was denied, the Superior Court has acknowledged that "while this Court has the authority to sanction an appellant who violates Rule 2116(a), the authority is typically not exercised, absent pervasive non-compliance with the Rules of Appellate Procedure." *Silver v. Pinksey*, 981 A.2d 284, 291 n.4 (Pa. Super. 2009).  Based on *Nolan* and the foregoing Pennsylvania caselaw, Rule 2116(a) was not "adequate" because it was not "regularly followed."  Grounds Five through Eight of the instant Petition are therefore not procedurally defaulted.  Because

these claims were not decided on the merits by the Superior Court and they are not procedurally barred, the Magistrate Judge should have conducted a *de novo* review of the claims. *See Wilson v. Beard*, 589 F.3d 651, 658 (3d Cir. 2009).  As set forth in detail below, however, the instant Petition will nevertheless be denied under this standard of review since it fails to set forth a viable claim for relief.

### 3.    Objections Seven and Sixteen

In his seventh objection to the Report and Recommendation, Petitioner argues that the Magistrate Judge should have applied the pre-AEDPA *de novo* standard of review in considering Ground Nine of the habeas Petition under the futility doctrine and not § 2254's deferential standard of review.  As a result, Petitioner, in objection sixteen, asserts that the Magistrate Judge improperly recommends denial of the claim.  Petitioner's objections are without merit.  Here, the Magistrate Judge did not defer to the state court's determination on this claim (as the claim was not raised in Petitioner's direct appeal or his PCRA Petition).  Rather, Magistrate Judge Blewitt reviewed the record and found no "merit to any of Petitioner's ineffective assistance of counsel claims.  Even if Petititoner's claims did have merit, their cumulative prejudicial effect could not rise to the level of a substantial and injurious effect given the overwhelming evidence of guilt against Petitioner presented at his trial." (Doc. 79, 35.)  As I agree that the cumulative effect of any errors did not have a substantial and injurious effect on the jury's verdict, Petition is not entitled to relief under Ground Nine of the Petition.  Petitioner's seventh and sixteenth objections will be overruled.

### 4.    Objections Eight and Nine

In his eighth objection, Petitioner asserts that the Magistrate Judge failed to apply the correct standard of review to Ground One of the Petition.  Objection nine claims that the Magistrate Judge erred in his recommended disposition of Ground One.  Petitioner argues that he is entitled to relief on this claim under § 2254(d)(2) because the state court's

determination was based on an unreasonable review of the facts in light of the evidence.

As noted by Magistrate Judge Blewitt, for Petitioner to obtain the relief requested in Ground One, he must have invoked his *Miranda* rights at the time he was questioned by the police. (Doc. 79, 15.)  The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U .S. Const. Amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination. *See Malloy v. Hogan*, 378 U.S. 1, 8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964).  In *Miranda v. Hogan*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467.  A confession taken during a custodial interrogation without the provision of *Miranda* warnings violates the privilege against self incrimination. *See Thompson v. Keohane*, 516 U.S. 99, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995).  "To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the *Miranda* Court held, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *Thompson*, 516 U.S. at 107; *see also Miranda*, 384 U.S. at 479.

The *Miranda* Court also outlined the procedures to be followed after the police provide the warnings.  If the accused requests counsel, "the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474.  *Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 481, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). These rights may be waived, provided the waiver is voluntary, knowing and

18

intelligent. *Miranda*, 384 U.S. at 444. In *Edwards*, the Supreme Court held that:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused . . . , having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police . . . . [I]t is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.

*Edwards*, 451 U.S. at 484-85.   If the totality of the circumstances surrounding the interrogation demonstrates that the defendant had the required level of comprehension, a court may properly conclude that the waiver was knowing and intelligent.  While the ultimate issue of whether a *Miranda* waiver is constitutionally valid is a question of law requiring independent federal determination, factual questions decided by the state court in determining whether a confession was given voluntarily, knowingly and intelligently, are entitled to a presumption of correctness in federal habeas review.  *Miller v. Fenton*, 474 U.S. 104, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985).

Here, as the Magistrate Judge correctly observed, the record demonstrates that the trial court issued findings of fact which establish that Petitioner did not request counsel during the course of the custodial interrogation. (Doc. 79, 17-18.)  Petitioner was given his *Miranda* warnings on four occasions, but he nevertheless waived his *Miranda* rights and engaged in discussions with the police officers according to the trial court. (*Id*; Doc. 70, 670-73.)  The Pennsylvania Superior Court affirmed this conclusion, specifically finding "no error in the [trial judge's] determination that Mandeville's confession was knowing, intelligent, and voluntary." (Doc. 70, 291.)   Based on this evidence, "'the state court's determination was reasonable . . .' given the totality of the evidence adduced in the state tribunal.'" *Williams v. Beard*, 637 F.3d 195, 204 n.7 (3d Cir. 2011) (quoting *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004)).  Petitioner's eighth and ninth objections will therefore be overruled.

**5.     Objection Ten**

In his tenth objection to the R & R, Petitioner argues that the Magistrate Judge applied the incorrect standard of review and erred in his disposition of the claim in Ground Three.  As noted, Ground Three asserts that trial counsel was ineffective for failing to object to the trial court's charge which defined the concept of reasonable doubt.  The contested jury instruction provided:

> A reasonable doubt is a doubt which would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his own affairs.  A reasonable doubt must arise out of the evidence presented with respect to some element of the crime.  A real doubt must be a real doubt.  A reasonable doubt must be a real doubt.  It may not be an imaginary one nor may it be a doubt manufactured to avoid carrying out an unpleasant duty.

(Doc. 70, 376-77, 450-51.)

Petitioner's tenth objection is without merit.  Here, Petitioner presented this claim in his PCRA Petition, but the argument was rejected by the Pennsylvania Superior Court.[5] Specifically, the Superior Court stated:

> Mandeville cites a number of United States Supreme Court cases and other federal opinions criticizing jury instructions which equate "reasonable doubt" with the term "substantial doubt."  However, in this case, the Supreme Court cases cited have no application since the trial court never used the term "substantial doubt" while instructing the jury.  Furthermore, the concerns raised by the phrase substantial doubt are not present in the phrase "real doubt." There is no indication of the weight necessary, only that it need be an actual doubt. . . .  Therefore, this Court affirms the trial court's decision denying the PCRA relief requested on this issue.

---

[5]     The Pennsylvania Superior Court addressed Petitioner's ineffective assistance of counsel claim asserted in Ground Three under Pennsylvania's three-part inquiry. (Doc. 70, 541.)  The deferential standard of review nevertheless applies to the ineffective assistance claims addressed by the Superior Court as the Pennsylvania standard is essentially the same as the *Strickland* standard. *See, e.g., Perez v. Rozum*, No. 11-1682, 2012 WL 2866606, at *2 n.2 (3d Cir. July 13, 2012) ("Although the Superior Court did not cite the clearly established federal law at issue here- the Supreme Court's decision in *Strickland*- it did apply Pennsylvania's three-part test for evaluating ineffectiveness claims.  Because [Pennsylvania's] standard is the same as *Strickland's*, we agree with the District Court that § 2254(d) applied here."); *see also supra* note 3.

(Doc. 70, 544.)  Since this claim was adjudicated on the merits in state court, the deferential standard of review under § 2254(d) applies, and the Superior Court's determination can only be reversed if it is contrary to or violates clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  As noted by the Superior Court, the United States Supreme Court has not clearly held that a jury instruction equating "reasonable doubt" to "real doubt" violates federal law.  Petitioner's tenth objection will therefore be overruled.

### 6.   Objection Eleven

The eleventh objection to the R & R asserts that the Magistrate Judge's disposition of Ground Four of the Petition was erroneous.  Petitioner specifically contends that trial counsel was ineffective for failing to object to the trial court's instruction which relieved the prosecution of proving that he had the specific intent to kill.  This claim was rejected by the Superior Court during the course of Petitioner's PCRA proceedings. (Doc. 70, 545-46.) According to the Superior Court,

> Mandeville's argument selectively quotes the transcript.  When the transcript is examined, it is apparent that the trial court specifically instructed the jury, "[t]he intent of promoting or facilitating the commission of the crime of first degree murder requires the Defendant acted with a specific intent to kill." Similarly, the trial court instructed the jury in relation to accomplice liability, "[t]he intent of promoting or facilitating the commission of the crime of first degree murder requires the Defendant acted with a specific intent to kill." Mandeville selectively relies on part of the record instead of the entire instruction given.  As a result, Mandeville's argument is without merit.

(Doc. 70, 546-47.)

As with Magistrate Judge Blewitt, I agree with the Superior Court's determination that Petitioner's claim lacks merit in light of the entire jury instruction given by the trial court which required the jury to find that Petitioner acted with a specific intent to kill.  Pursuant to the deferential standard of review afforded the Superior Court's decision under § 2254(d), and finding the Superior Court's resolution of this claim not contrary to Supreme Court precedent, an unreasonable application of federal law, or unreasonable in light of the evidence presented, Ground Four of the Petition does not warrant habeas relief.

**7.     Objection Twelve**

Objection twelve asserts that the Magistrate Judge's recommended disposition of Petition Ground Five was erroneous.  In particular, Petitioner argues in Ground Five that the prosecutor made improper comments to the jury during his closing arguments that Petitioner lied on the witness stand during trial.

While the entire transcript of the prosecutor's closing argument is not included in the record that has been presented to this Court, the exhibits provided to this Court demonstrate that Petitioner's ineffective assistance of trial counsel claim for lack of objection to the prosecutor's closing remarks should be denied.   After Petitioner commenced the PCRA action, the PCRA court conducted a hearing on Petitioner's ineffective assistance of counsel claims.  During the hearing, Petitioner's trial counsel was asked whether "the prosecutor in this case injected personal opinion in his closing argument?" (Doc. 70. 249.) The trial counsel, however, did not recall the prosecutor engaging in any objectionable conduct. (*Id.*)

Petitioner's brief in support of the instant habeas Petition (Doc. 51) and his supplemental memorandum of law in support of his PCRA Petition (Doc. 70, 333-43) contain the prosecutor's specific comment which Petitioner objects to as improper: "the only real question is who lied . . . You have to use your common sense here, and if you use your common sense there's no question on the second question either, this man, David Mandeville, has lied to you on the witness stand." (*Id*. at 343.)  While Petitioner argues that the prosecutor's comments were personal opinions, this passage is more aptly characterized as the prosecutor highlighting the discrepancies between Petitioner's testimony and the other evidence presented at trial.  The prosecutor then emphasized that by applying common sense, the jury could determine which witnesses and testimony to credit.   *See, e.g., United States v. Williams*, 134 F. App'x 510, 514 (3d Cir. 2005)

("prosecutor was permitted to highlight the lack of evidence put on by [Defendant] that would indicate what motive [other witnesses] had to be untruthful. In addition, at no time did the prosecutor base his questions on personal knowledge or evidence not presented at trial."); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 331 (6th Cir. 2012) ("In general, it is improper for a prosecuting attorney in a criminal case to state his personal opinion concerning the credibility of witnesses or the guilt of the defendant. . . . However, a prosecutor may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony.").

Petitioner's claim in Ground Five of the Petition does not rise to the level of ineffective assistance of counsel under *Strickland*.   In particular, the prosecutor did not assert his personal opinion as to whether Petitioner was lying, but instead argued that the jury should reach this conclusion in light of the evidence presented at trial.   As this is a permitted tactic during closing argument, Petitioner's trial counsel's decision to not raise a baseless objection to the prosecutor's comments was reasonable.   Furthermore, in light of the overwhelming evidence presented at trial, including Petitioner's confession as to his participation in the homicide, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.  Petitioner is not entitled to relief on this claim.

### 8.    Objections Thirteen and Fourteen

Petitioner's thirteenth and fourteenth objections to the R & R argue that the Magistrate Judge improperly recommends denial of Grounds Six and Seven of the habeas Petition.  Ground Six alleges that trial counsel was ineffective for failing to elicit favorable testimony from Linda Lopatofsky "regarding her testimony about her telephone conversation with the victim relative to a female requesting assistance from the victim around the time of the crime." (Doc. 1.)  Petitioner claims ineffective assistance in Ground VII of the Petition

on the basis that trial counsel did not sufficiently cross-examine Kathleen Torrick as to whether Petitioner was one of her assailants in a similar yet separate burglary of her residence. Petitioner further asserts that competent counsel "would have asked the witness if she could identify the Defendant as a perpetrator of the crime against her to show that he was innocent of the crime and that the confessions were false." (Doc. 82, 19.)

Because Petitioner's trial counsel's decision not to question Ms. Lopatofsky on cross-examination about her telephone conversation was a sound trial strategy, Ground Six does not entitle Petitioner to the relief requested. Specifically, during the PCRA hearing, Petitioner's trial counsel articulated his reasoning for not questioning Ms. Lopatofsky on this issue:

> She as I recall on direct examination had related facts substantially along the lines of what you had just asked me that she was speaking with Mr. Gregg, he had to leave the phone to answer the door. That there was a woman at the door and I believe she related that Mr. Gregg said that the woman was having car trouble. I might be wrong about that part but everything up to that point I'm certain of. *I didn't want to develop that further on cross-examination. I felt that the information that was brought out on the direct examination was extremely favorable to Mr. Mandeville's case in terms of creating reasonable doubt and without knowing what else might be said by Ms. Lopatofsky. I didn't want to take that risk having felt that we had already received the information that was going to be very helpful to us.* And as I recall I referenced that in my closing.

(Doc. 70, 357 (emphasis added).) "'*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better.'" *Goldwire v. Folino*, 274 F. App'x 143, 146 (3d Cir. 2008) (quoting *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006)). Here, the record is clear that Petitioner's trial counsel elected not to pursue a line of questioning of Ms. Lopatofsky after the witness already testified in a manner that counsel believed was helpful to Petitioner's defense. As the decision not to further question the witness after already receiving testimony favorable to the accused demonstrates a sound, reasonable trial strategy in this case, Petitioner's trial counsel's performance was not deficient under the *Strickland* standard. *See also United States v. Noble*, No. 09-594, 2010 WL 653539, at *8

24

(E.D. Pa. Feb. 23, 2010).

Likewise, Petitioner's trial counsel's decision not to question Ms. Torrick as to whether Petitioner was one of her assailants in a similar burglary did not amount to ineffective assistance of counsel.  Petitioner's trial counsel justified his reasoning for not cross-examining the witness on this point during the PCRA hearing:

> She had not identified Mr. Mandeville as the defendant when the District Attorney had called her on direct examination.  Again, that was a point in our favor and I did not want to take the risk, not knowing what Ms. Torrick might say if I asked her directly.  She had every opportunity to do so and had not.

(Doc. 70, 358.)   Pursuant to *Strickland* and its progeny, Petitioner's trial counsel's determination not to specifically question Ms. Torrick as to whether Petitioner was one of her assailants in the separate burglary was a sound trial strategy, as the record provides sufficient evidence of Petitioner's trial counsel's reasoning and thought process in employing this trial tactic.  Anyway, even if Petitioner's trial counsel's strategy was not sound, in light of the overwhelming evidence of Petitioner's guilt, the decision not to further question these witnesses did not prejudice the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.  Grounds Six and Seven of the instant Petition will be denied.

### 9. Objection Fifteen

Objection fifteen to the Magistrate Judge's R & R asserts that Magistrate Judge Blewitt improperly recommends denial of Ground Eight of the habeas Petition.  Ground Eight alleges that appellate counsel "failed to federalize (*i.e.* state a federal question for federal revew) on appeal regarding issue # 2 on direct appeal relating to the trial court allowing into evidence testimony and other evidence relating to other crimes allegedly committed by the Defendant." (Doc. 1.)  Magistrate Judge Blewitt construed Ground Eight as asserting "that [Petitioner's] appellate counsel was ineffective for failing to preserve as a separate violation of the U.S. Constitution the claim that the trial court should not have allowed into evidence testimony and other evidence relating to other crimes allegedly

committed by Petitioner." (Doc. 79, 30.)  Essentially, Petitioner's claim is that the trial court's decision to allow evidence of his other crimes, acts, or wrongs pursuant to Pennsylvania Rule of Evidence 404(b) for the "the limited purposes of showing a relationship between co-conspirators, a common plan or scheme, motive or intent," (Doc. 70, 25a-26a), violated his constitutional rights.  Petitioner further argues that admission of this evidence was extremely prejudicial in light of the fact that he was "never tried or convicted of either of the two crimes used against him."  (Doc. 82, 20.)  While I disagree with the recommendation that Ground Eight was procedurally defaulted for the reasons discussed above, Petitioner's generalized "claims that his due process rights were violated by his appellate counsel's failure to federalize his claims about the trial court's alleged erroneous errors . . . . [did] not deprive Petitioner of fundamental fairness in his criminal trial . . . [to] serve as the basis for habeas relief." (Doc. 79, 34.)

"A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence.  A federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation . . . ." *Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001).  "It is only where an evidentiary ruling 'so infuse[s] the trial with unfairness as to deny due process of law,' that federal habeas corpus review may exist." *Livingston v. Pitkins*, No. 09-1278, 2012 WL 3011786, at *11 (M.D. Pa. July 23, 2012) (quoting *Lisenba v. People*, 314 U.S. 219, 228, 62 S. Ct. 280, 86 L. Ed. 166 (1941)).  As described by the Sixth Circuit:

> There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id*. at 75 n. 5, 112 S. Ct. 475.  Moreover, in *Spencer v. Texas*, 385 U.S. 554, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the

exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id*. at 563-64, 87 S. Ct. 648. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." *Id*. at 564, 87 S. Ct. 648. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Jordan v. Haunani-Henry*, 199 F.3d 1332 (9th Cir. 1999) ("the [Supreme] Court's language in *Dowling v. United States*, 493 U.S. 342, 352-54, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990), suggests that the Court did not think that evidentiary rulings regarding 404(b)-type evidence implicated due process concerns"). And, the Third Circuit has found that "[a]dmission of 'other crimes' evidence provides a ground for federal habeas relief only if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.'" *Bronshtein v. Horn*, 404 F.3d 700, 731 (3d Cir. 2005) (quoting *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir.1989)). While Petitioner was never tried or convicted of these acts which were admitted into evidence, I do not find that the probative value of the other crimes, wrongs, or acts evidence to demonstrate a relationship between co-conspirators, common plan, motive, or intent was so outweighed by its inflammatory content that the admission of this evidence can be characterized as denying Petitioner his constitutional rights. The state court's alleged evidentiary error is therefore not cognizable on habeas review,[6] and Ground Eight of the Petition does not warrant habeas relief.

---

[6]     During the course of the direct appeal, the Superior Court noted:

> We cannot conclude that the trial court abused its discretion in admitting the disputed evidence. The similarity of the perpetrators' objections, their use of duct tape to bind the victims, and the short lapse of time between the events render a compelling portrayal of common scheme. These circumstances coupled with the robbery confessions of Mandeville and his co-conspirators provide compelling evidence of Mandeville's

####    10.    Objection Seventeen

Petitioner's seventeenth objection to the R & R claims that the Magistrate Judge erred when he failed to issue a Habeas Rule 5 order requiring Respondent to furnish missing records.  Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, that "[t]he judge *may* order that the respondent furnish other parts of existing transcripts . . . ."  *See* Rules Governing § 2254 Cases, Rule 5(c) (emphasis added).  As discussed above, the Magistrate Judge was able to make a proper recommendation to the instant habeas Petition based on the relevant documents and transcripts in the record submitted by Respondent.   Accordingly, Petitioner's seventeenth objection to the R & R will be overruled.

####    11.    Objection Eighteen

Objection eighteen to the R & R asserts that the Magistrate Judge erred in recommending denial of Petitioner's request for discovery.   Magistrate Judge Blewitt recommends denial of Petitioner's discovery request "as unnecessary as further discovery would not benefit the Petitioner or the Court." (Doc. 79, 35.)

Rule 6(a) of the Rules Governing § 2254 Cases reads as follows: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." *See* Rules Governing § 2254 Cases, Rule 6(a).  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997).  The requisite good cause for discovery in a habeas action is

---

identity as a perpetrator of Gregg's murder.  Consequently, we find no error in the trial court's admission of evidence concerning the Torrick and Watson robberies.

(Doc. 70, 294.)

shown "where specific allegations before the court show reason to believe that the petitioner

may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."

*Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300, 89 S. Ct. 1082, 22

L. Ed. 2d 281 (1969)).   "A habeas petitioner may satisfy the 'good cause' standard by

setting forth specific factual allegations which, if fully developed, would entitle him or her to

the writ." *Williams*, 637 F.3d at 209 (citing *Harris*, 394 U.S. at 300, 89 S. Ct. 1082).   In this

case, the discovery requested by Petitioner relates to police officer notes and/or testimony,

as well as transcripts and documents involving Petitioner's co-defendants at trial or the

other criminal cases in which Petitioner was charged.   Petitioner fails to connect how this

evidence would establish that he was denied effective assistance of counsel so as to entitle

him to the relief sought in his Petition.   "Good cause" to warrant discovery in this case has

not been demonstrated, and the Magistrate Judge's recommendation to deny Petitioner's

request for discovery will be adopted.

>    **12.    Objection Nineteen**

>    In his nineteenth objection, Petitioner contends that the Magistrate Judge erred by

failing to conduct an evidentiary hearing on his habeas claims.   Petitioner asserts that an

evidentiary hearing was mandatory in this case prior to the disposition of his claims.

>    In *Townsend v. Sain*, 372 U.S. 293, 312-13, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963),

*overruled in part on other grounds* by *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 5, 112 S. Ct.

1715, 118 L. Ed. 2d 318 (1992), the United States Supreme Court announced the following

rule: "Where the facts are in dispute, the federal court in habeas corpus must hold an

evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing

in a state court, either at the time of the trial or in a collateral proceeding.   In other words

a federal evidentiary hearing is required unless the state-court trier of fact has after a full

hearing reliably found the relevant facts."   The Court enumerated six specific circumstances

in which a federal habeas court must grant an evidentiary hearing: "(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." *Id*. at 313, 83 S.Ct. 745.

Here, Petitioner simply repeats the standard enunciated by the Court in *Townsend* without articulating how the state court fact-finding was specifically deficient. Rather, Petitioner's dissatisfaction is with the *legal* conclusions reached by the state court and Magistrate Judge Blewitt by applying these facts. An evidentiary hearing, however, would not alter the application of the law to the facts of record. Petitioner's contention does not mandate the Court to conduct an evidentiary hearing because "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Taylor v. Horn*, 504 F.3d 416, 446 (3d Cir. 2007) (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)). Petitioner has not identified any facts in dispute from his state court proceedings indicating that he did not receive a full and fair evidentiary hearing, nor has he raised a substantial allegation of newly discovered evidence. In the absence of such a showing, an evidentiary hearing on Petitioner's habeas Petition would not further develop the factual record to support his *Strickland* claims.

Petitioner's alternative request for a discretionary evidentiary hearing will be denied for the same reason. "Even if it were not mandatory, there is no question that under the relevant Supreme Court precedent and AEDPA, the District Court had discretion to grant Boyd a hearing." *Boyd v. Waymart*, 579 F.3d 330, 360 (3d Cir. 2009) (Scirica, C.J., concurring) (citing *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939, 167 L. Ed.

2d 836 (2007)).  "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court . . . . " *Id*. (quoting *Goldblum v. Kelm*, 510 F.3d 204, 222 (3d Cir. 2007)).  But, as Petitioner has not identified what new evidence will be presented during the evidentiary hearing that is not already available, an "'evidentiary hearing would [not] be meaningful, in that a new hearing would [not] have the potential to advance the petitioner's claim.'" *Williams v. Beard*, 637 F.3d 195, 211 (3d Cir. 2011) (quoting *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000)).  In addition, Petition is unable to show "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).The request for a discretionary evidentiary hearing will be denied and the nineteenth objection to the R & R will be overruled.[7]

### 13.   Objection Twenty

Objection twenty to the Report and Recommendation is entitled "other matter."  In this objection, Petitioner simply notes that he has dropped habeas Ground Two and he has withdrawn the Motion for Relief from Judgment (Doc. 28.)  Accordingly, objection twenty does not contain any substantive objections in opposition to the Report and Recommendation and the objection will be overruled.

### V. Conclusion

For the above stated reasons, Petitioner's Petition for Writ of Habeas Corpus (Doc.

---

[7]    Section 2254(e)(2) provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows . . . ." 28 U.S.C. § 2254(e)(2).  Because an evidentiary hearing is not necessary in this case, I need not make a determination as to whether Petitioner adequately developed the factual basis of his claims in the state court proceedings.

1) will be denied with respect to all claims.  Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a petition under 28 U.S.C. § 2254 is issued, the district court must make a determination as to whether a certificate of appealability should issue. *See* 3d.Cir. L. A. R. 22.2.  A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To meet this burden. a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484–85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (internal citations and quotations omitted).  In the present matter, reasonable jurists may debate whether the Magistrate Judge and this Court erred in disposing of the Petition without review of the entire state court record (Objection 1 to the Report and Recommendation. Doc. 82, p. 2-3); *cf. Durham v. Piazza*, No. 07-4338, 2009 WL 2902275 (E.D. Pa. Sept. 9, 2009).  The certificate of appealability will be denied in all other respects.

An appropriate order follows.


September 25, 2012
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge